774 So.2d 846 (2000)
Kevin PURYEAR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3580.
District Court of Appeal of Florida, Fourth District.
December 27, 2000.
Richard L. Jorandby, Public Defender, Margaret Good-Earnest, and Damon E. *847 Amedeo, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.
EN BANC
GROSS, J.
A jury found Kevin Puryear guilty of robbery, as a lesser included offense of robbery with a weapon. We write to address one issuewhether the victim's out-of-court descriptions of her assailant shortly after the robbery were admissible as non-hearsay under section 90.801(2)(c), Florida Statutes (1999), as statements of "identification of a person," where the victim testified at trial and was subject to cross-examination.
Sixteen-year-old Amy Deese was the victim of the robbery. She testified that on April 27, 1999, between 3:00-4:00 p.m., she pulled into a stall at a do-it-yourself car wash. On her way to the change machine, she saw "a guy standing there by the fence" behind the car wash "[j]ust walking back and forth." No one else was around. Deese looked at the man for only "a couple of seconds. Just a glance." She "didn't pay any mind" to what he looked like. After getting change, Deese began to wash her car.
As she knelt to wash her tires, a man came up to her from the right. He put what she thought was a gun to her head. It felt hard and metallic. She saw out of the corner of her eye that it was black. The man told her something like, "give me your money." She hesitated, but without looking back, gave him six single dollar bills from her back pocket.
The man took off. Deese stood up and saw her assailant turn near the vacuum cleaners. He made a crude comment, and told her "you better be glad you're alive or thank God you're alive." When asked if she got a good look at him, she said "Not really. Just a side of his face." When asked if she got a good look at his face, Deese replied "No." Deese observed the man's clothing, height, and weight for only a matter of seconds.
Deese got in her car and drove home. She told her mother what had happened. Her mother advised her to make a police report and then left to look for the assailant.
Danny Cratsenberg, Deese's boyfriend, came over to the house. Deese told him about the robbery. The two of them went to look for the suspect, whom Deese had described. Not spotting the assailant, the victim and Cratsenberg went to the police station.
To a detective, Deese gave a description of the perpetrator as a black male wearing a burgundy or maroon shirt, white tennis shoes, and black faded jeans. She said he had body odor and was missing every other tooth. She estimated him to be age 30-35. Deese testified that she told the detective at the police station that the suspect had a mustache and missing teeth; she said she saw a mustache from glancing at his face as he stood by the vacuum cleaners after the robbery. But she said that she "just don't remember when I seen his teeth."
Deese and her boyfriend left the police station. On the drive home, near the car wash, Deese saw "the man crossing the street." He was the only black man in the area. Cratsenberg asked if the man was her assailant. Deese said she "hesitated because I wasn't really sure. Then I looked at him and I said yeah that's him." She was able to identify the robber based upon his clothes, height, and weight. She did not identify him by his face. Deese testified "I knew it's him by the clothes, and I also wanted it to be him because I knew the cops were looking for him."
The couple waved down a police officer, who stopped appellant. Without getting out of the car, from approximately twenty feet away, Deese identified appellant as he *848 stood across the street from her. She was sure it was the person who robbed her based on "clothing and height, stuff like that."
In court, Deese was able to identify defendant as the person who robbed her.
During cross-examination, Deese conceded that when she first saw a man near the fence at the car wash, she only glanced at him and would not be able to recognize him again. She was not sure that the man by the fence was the same person she saw in the car wash or in police custody. The first time she saw her assailant's face was from a distance of about twenty feet as he was running away. He turned and paused, muttered obscenities at Deese, and continued on. Deese never got a full frontal view of his face. She was not sure when she saw his mouth with the missing teeth and admitted that her description of his teeth was "pretty much a guess." The victim testified that her in-court identification of defendant was based upon seeing him at the vacuum cleaners at the car wash. She said she was not good at estimating a person's height and weight. She noticed nothing unusual about the robber's teeth. When asked if she was positive, based on her observation of the assailant's face, clothing, height, and weight, that the man the police arrested was the same man who robbed her, Deese said she was not positive, only about seventy-five percent sure.
However, on re-direct examination, she said based on only the clothes, height, and weight, she was positive the man arrested was the assailant.
On the day of the robbery, Detective Wardlaw took a report from Deese at the police station. The state asked the detective, "What was the description that [the victim] gave you?" Over appellant's hearsay objection, Wardlaw testified that Deese described the robber as "a black male, approximately six foot in height, 140 pounds, between the ages of 30, 35. He had a burgundy t[ee]-shirt with prints on it and faded black blue jeans." Wardlaw said that the victim reported that the perpetrator's shoes were "white sneakers" and said that he had "every other tooth missing in his mouth," a moustache, and a "very strong body odor to him."
After the detective finished her report, she responded to the scene where appellant had been detained. She saw that appellant "[a]bsolutely" matched the description just given by the victim. The detective stood "very close" to appellant and noticed that he was "emitting a strong odor, body odor." Detective Wardlaw then went across the street and spoke to Deese, who identified appellant as her assailant. The detective testified that the victim took her time in making the identification.
During the direct examination of Cratsenberg, the state asked him to relate the description Deese had given him of her assailant. Defense counsel raised a hearsay objection, which the trial court overruled. Cratsenberg said that at Deese's house, right after the robbery, she told him that the robber was wearing a maroon shirt, faded black jeans, white sneakers, had "missing teeth" and a moustache; she said that the perpetrator was a black man and that he "stunk."
Officer Kazmierczak stated that she stopped appellant in the vicinity of the car wash because he wore a burgundy tee-shirt and black faded jeans. The officer found no weapon on appellant or in her search of the area. She found nothing on appellant that she could conclusively say belonged to the victim.
Puryear challenges the trial court's overruling of his hearsay objections, allowing both Detective Wardlaw and Cratsenberg to relate to the jury the details of the victim's description of the robber given on the day of the crime.
At issue is the proper application of section 90.801(2)(c), Florida Statutes (1999). That section provides:

*849 (2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
* * *
(c) One of identification of a person made after perceiving the person.
Id. Since the victim testified at trial and was subject to cross-examination, under section 90.801(2)(c) her out-of-court statements to her boyfriend and the detective would be non-hearsay if they qualify as ones of "identification of [Puryear] made after perceiving" him. Id.
Analysis is complicated by cases from the Florida Supreme Court and this court falling on opposite sides of the issue. The disagreement centers on whether a "statement ... of identification" under section 90.801(2)(c) is broad enough to include the details of the declarant's out-of-court description of a person, or whether that section is limited to the declarant's mere designation of a person as the one who committed the crime or other act at issue in the trial.
The supreme court construed section 90.801(2)(c) in a first degree murder case, Swafford v. State, 533 So.2d 270, 276 (Fla. 1988). The victim of the homicide was a clerk at a FINA gas station. See id. at 272. One state witness saw the victim there at 6:17 a.m. See id. at 276. Another state witness arrived at the station at 6:20 a.m. and found no attendant on duty. See id. at 272. A third witness said the defendant left her at about 6:00 a.m. and drove north on the highway on a course that would have taken him by the FINA station. See id. The defendant returned to his travelling companions at about 7:04 a.m. See id.
The defense in Swafford called "a person who had told the police that he had seen a man at the FINA station at 6:17 a.m. on the day of the crime, and the witness described from the stand the man he saw." Swafford, 533 So.2d at 276. The defense then sought to introduce a "police bulletin and the testimony of the officer who had prepared it, suggesting that the bulletin and testimony would provide a better description of the person seen than the witness'[] recollection over three years later." Id. The trial court excluded both the bulletin and the testimony on the ground of hearsay. See id.
The supreme court held that the police bulletin and the testimony of the officer who prepared it was hearsay because neither was a statement of identification under subsection 90.801(2)(c):
This position [that the proposed testimony was nonhearsay] is erroneous because a description is not an identification. An "identification of a person after perceiving him," subsection 90.801(2)(c), is a designation or reference to a particular person or his or her photograph and a statement that the person identified is the same as the person previously perceived. The witness in this case never made an identification of the person he had seen; he only gave a description. This testimony does not meet the definition of "identification" as used in subsection 90.801(2)(c).
Swafford, 533 So.2d at 276 (citations omitted).[1]
*850 While Swafford might appear to contain the definitive interpretation of section 90.801(2)(c) as it applies to a declarant's description of a person, the supreme court reached a different conclusion in another first degree murder case, Power v. State, 605 So.2d 856, 862 (Fla.1992). A key witness in Power was Frank Miller, who saw the victim go into a house where she said there was a man who "she believed wanted to rob her." Id. at 858. Miller saw a man inside the doorway. After the victim returned to the house, Miller drove back to his own house and called 911. To the deputy responding to the call, Miller "described the man he had seen as a white male with reddish hair." Id.
One of the many issues Power raised on appeal was that the trial court erred in allowing the deputy to testify that Frank Miller had said that "[t]he suspect was a white male with reddish-colored hair." Id. at 862. The supreme court first held that the statement was "probably admissible" under the excited utterance exception to the hearsay rule, section 90.803(2), Florida Statutes (1989). Id. Without equivocation, the court found the statement admissible under section 90.801(2)(c):
Additionally, the statement regarding the reddish hair was admissible non-hearsay as one of identification of a person made after perceiving him. See Sec. 90.801(2)(c). Frank Miller testified at trial and was clearly subject to cross-examination concerning the statement.
Id. The supreme court also wrote that even if the statement were erroneously admitted, "any error was harmless." Id. Power did not cite to Swafford.
Like the supreme court, this court has reached different interpretations of section 90.801(2)(c). In Harrell v. State, 647 So.2d 1016 (Fla. 4th DCA 1994), a police officer called to the scene of a robbery testified over objection that an eyewitness had "described the robber as wearing an orange shirt and brown pants" and that the "victim gave a similar description." Id. at 1017. Applying section 90.801(2)(c), we held that the "identification statements of the victim and [the eyewitness] to the officer were not inadmissible as hearsay, since they testified at trial." Id. at 1018.
Over two years later, in Davis v. State, 694 So.2d 113, 113 (Fla. 4th DCA 1997), we reversed a burglary conviction "because of the admission of hearsay testimony of a police officer as to the description of a suspect given to him by the victim of the crime." A police officer arrived at the scene a short time after the crime, and the "victim gave him a description of the intruder, including race, approximate age and body shape"; the victim also said that the intruder "was wearing a white ribbed or striped shirt and blue gym pants." Id. at 113-14. The victim testified at trial and identified the defendant as the intruder. See id. at 114. Over the defendant's hearsay objection, the "officer was permitted to testify as to [the] victim's description of the intruder on the date of the incident." Id.
Citing to Swafford, we held that the exclusion from hearsay found in section 90.801(2)(c) did not apply because the officer testified to the victim's description of the intruder. See id. Without so stating, we adopted Swafford`s conclusion that a declarant's description of a person is not a "statement of ... identification" within the meaning of the statute. See id. Davis contains no reference to either Harrell or Power, both decided after Swafford.
Power and Swafford cannot be reconciled. Power holds that description testimony is admissible under section 90.801(2)(c). See Power, 605 So.2d at 862. Swafford holds that a declarant's description of a person is not an "identification of a person after perceiving him" within the meaning of the rule. Swafford, 533 So.2d at 276. Swafford involved a defendant's reliance on section 90.801(2)(c); in Power the state offered testimony under that section of the evidence code.
Although it is possible to dismiss the brief holding in Power as dicta, given the *851 clear language of the opinion, that interpretation is available only to the supreme court. The evidentiary ruling in Swafford could also have been based on other grounds. See supra, note 1. We therefore conclude that the supreme court overruled Swafford sub silentio in Power. See Deluxe Motel, Inc. v. Patel, 727 So.2d 299, 301 (Fla. 5th DCA 1999); Wright v. State, 519 So.2d 1157, 1157 (Fla. 5th DCA 1988).
There is reasonable support for both interpretations of section 98.801(2)(c) found in the case law. Whether the statute should be expansively construed is a policy decision concerning the type of evidence a fact finder should consider at trial.
On one hand, the statute speaks of an "identification of a person," not merely a "statement of identification." A plain reading of the statute is thus consistent with Swafford `s holding that "a description is not an identification" and that the statute contemplates "a designation or reference to a particular person or his or her photograph...." 533 So.2d at 276.
Identification is a forensic term of art which encompasses a process whereby a person first perceives a suspect and then identifies him or her, either through a lineup, a show-up, or other means. See People v. Sykes, 229 Mich.App. 254, 582 N.W.2d 197, 204 (1998).
The definition of "identification" in BLACK'S LAW DICTIONARY 745 (6th ed.1990) reads as follows:
Proof of identity. The proving that a person, subject, or article before the court is the very same that he or it is alleged, charged, or reputed to be; as where a witness recognizes the prisoner as the same person whom he saw committing the crime; or where handwriting, stolen goods, counterfeit coin, etc., are recognized as the same which once passed under the observation of the person identifying them.
(Emphasis added).
The definition of "eyewitness identification" reads:
Type of evidence by which one who has seen the event testifies as to the person or persons involved from his own memory of the event.
(Emphasis added). BLACK'S LAW DICTIONARY 589 (6th ed.1990).
Both definitions relate the concept of a witness's recognition of the subject as the same person who was earlier observed by the witness identifying the subject. Similarly, Swafford interprets a statement of identification as:
a designation or reference to a particular person or his or her photograph and a statement that the person identifies is the same person previously perceived.
533 So.2d at 275.
Swafford presents the typical situation contemplated by section 90.801(2)(c)one where the victim sees the assailant shortly after the criminal episode at a line-up, show-up, photo array, or chance encounter and says, "That's the [person]." Stanford v. State, 576 So.2d 737, 739 (Fla. 4th DCA 1991); see State v. Lopez, 123 N.M. 599, 943 P.2d 1052, 1055 (App.1997). The rule allows introduction of an identification in situations "where the [declarant's] memory no longer permits a current identification" or "where before trial the witness identifies the defendant and then because of fear refuses to acknowledge his previous identification." United States v. Elemy, 656 F.2d 507, 508 (9th Cir.1981) (citation omitted).
On the other hand, there is also a body of law concluding that to allow description testimony of a person under section 90.801(2)(c) does not do violence to the policy behind the rule. These cases turn on the rationale that the ability to describe a person's physical characteristics is the fraternal twin of the capacity to identify the person. A witness's description of a suspect carries greater probative force when it occurs closer in time to the initial observation, when the witness's memory is fresher and unpolluted by intervening forces of suggestiveness.
*852 Cases holding that a declarant's description of a suspect is a type of "identification" within the meaning of the statute reason that this interpretation is consistent with the policies behind the rule defining hearsay, which seek to facilitate the search for the truth. See United States v. Brink, 39 F.3d 419, 425 (3d Cir.1994); United States v. Moskowitz, 581 F.2d 14, 22 (2d Cir.1978) (Friendly, J., concurring) (noting it would be a "straight-forward analysis to regard the sketch as an integral part of [the witnesses'] statements to the police artist which enabled him to draw it ... it was thus admissible under Rule 801(d)(1)(c)"); Sparks v. United States, 755 A.2d 394, 399 (D.C.2000); State v. Motta, 66 Haw. 254, 659 P.2d 745, 750-51 (1983) (holding that a composite sketch, which is like a verbal description, is admissible as substantive evidence of a defendant's appearance under Hawaii evidence code section identical to Federal Rule of Evidence 801(d)(1)(C)); State v. Woodbury, 127 Idaho 757, 905 P.2d 1066, 1068-69 (App.1995). But see State v. Jenkins, 168 Wis.2d 175, 483 N.W.2d 262, 267-68 (App.1992) (citing Swafford and holding a description is not an "identification").
Under either construction of section 90.801(2)(c), the reasons for admitting identification statements as non-hearsay are that (1) the earlier, out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial and (2) the availability of the declarant for cross-examination eliminates a significant danger of hearsay testimony. See Fed.R.Evid. 801(d)(1)(c) (Advisory Committee Notes); § 90.801, Fla.Stat.Ann. (1999), Law Revision Council Note-1976; State v. Freber, 366 So.2d 426, 428 (Fla.1978).[2] As Justice Anstead wrote when he sat on this court, with an out-of-court identification closer in time to the actual event, "there is a lessened possibility of taint than when an identification is made in court where the identified person (defendant) is in the obvious `hotseat' alongside his counsel." Stanford, 576 So.2d at 740. Also, the rule permits "introduction of identifications made by a witness when memory was fresher and there had been less opportunity for influence to be exerted upon him." United States v. Marchand, 564 F.2d 983, 996 (2d Cir.1977) (footnote omitted). See 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 801 App. 02[3] (2d ed.1999).
For these reasons, we follow the supreme court's 1992 decision in Power and our 1994 decision in Harrell. We recede from our 1997 case, Davis. We hold that because the victim testified at trial and was extensively cross-examined, the trial court did not err in admitting the victim's out-of-court statements to the detective and her boyfriend.
On the remaining issues, appellant failed to object to the state's use of the victim's prior inconsistent statements, so the issue is not preserved for appellate review. See, e.g., Green v. State, 711 So.2d 69, 70 (Fla. 4th DCA 1998). Appellant's claim of ineffective assistance of counsel should be brought in a motion for post-conviction relief. See Dennis v. State, 696 So.2d 1280, 1282 (Fla. 4th DCA 1997). Appellant failed to move for judgment of acquittal during the trial and we find no fundamental error in the defendant's conviction based on the evidence at trial.
Because of the apparent conflict between Swafford and Power, we certify the following question as one of great public importance:

*853 HAS SWAFFORD V. STATE, 533 So.2d 270 (Fla.1988) BEEN OVERRULED BY POWER V. STATE, 605 So.2d 856 (Fla.1992)?
AFFIRMED.
WARNER, C.J., DELL, GUNTHER, STONE, POLEN, KLEIN, STEVENSON, SHAHOOD and HAZOURI, JJ., concur.
TAYLOR, J., concurs specially with opinion.
FARMER, J., dissents with opinion.
TAYLOR, J., concurring specially.
I agree with the majority that we are bound by the Florida Supreme Court's most recent interpretation of section 90.801(2)(c), Florida Statutes, in Power v. State, 605 So.2d 856 (Fla.1992). Although Power does not mention Swafford in deciding the admissibility of a witness' description of a suspect, it undeniably adopts a view of "identification" testimony that is directly contrary to Swafford's. I think that the better view to follow is the literal interpretation of section 90.801(2)(c) set forth in Swafford. As both the majority and dissenting opinions point out, a "statement of identification" is most commonly understood as a witness's affirmation that a particular person is the same person that the witness observed at an earlier time. Such statements are ordinarily made during identification procedures, such as photospreads and lineups. Ideally, they are given under circumstances where procedural rules and guidelines are followed by law enforcement investigators to reduce the risk of mistaken identification.
Given the well-documented dangers inherent in eyewitness identifications generally, and cross-racial identifications specifically, I would urge the supreme court to stay with Swafford and not extend section 90.801(2)(c) to cover situations where a witness provides only a description of a suspect.[3]
FARMER, J., dissenting.
I have two problems with today's decision. First, I cannot subscribe to the court's rationale for choosing which supreme court decision to follow. As the majority opinion shows, first we have a supreme court decision necessarily and directly deciding the issue. Swafford v. State, 533 So.2d 270 (Fla.1988). Then we have a later supreme court decision where the issue is raised but brushed aside as no basis to reach a different result and ultimately treated as harmless, if error at all. Power v. State, 605 So.2d 856 (Fla.1992). Yet, from these two decisions we find a conflict and treat the latter as "sub silentio" overruling the former. As methodology, this is all wrong.
Supreme courts in general and ours in particular do not work that way.[4] If the court has directly and necessarily decided an issue, it does not stealthily overrule it a few years later in a case in which the issue plays no role in the outcome. When a later decision happens to state an alternative ground for affirming that appears to *854 be contrary to what was decided in a former case, its dictum is properly understood as merely disposing of the case at hand, not as a full-dress reconsideration of the former decision. Here the context of the later dictum clearly shows that even the different holding on the issue would not have changed the result in the later case because the court had already decided the issue on alternative grounds. In short when the supreme court wants to reconsider an earlier express ruling on a discrete point of law, it says so unmistakably either by explicitly confronting the earlier decision or in language that cannot be misunderstood as indisputably receding from the former, even if unmentioned by name. Plainly that is not what is involved here.
Second, even if I were free to choose the correct construction of section 90.801(2)(c) I would not conclude that the legislature also intended to exclude descriptions from the hearsay rule. The purpose behind Federal Rule of Evidence 801(d)(1)(C) was explained by the United States Supreme Court in the following passage:
"The premise ... was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications. Thus, despite the traditional view that such statements were hearsay, the Advisory Committee believed that their use was to be fostered rather than discouraged. Similarly, the House Report on the Rule noted that since, `[a]s time goes by, a witness' memory will fade and his identification will become less reliable,' minimizing the barriers to admission of more contemporaneous identification is fairer to defendants and prevents `cases falling through because the witness can no longer recall the identity of the person he saw commit the crime.'" [c.o.]
United States v. Owens, 484 U.S. 554, 562, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In the Advisory Committee Notes to rule 801(d)(1)(C), the drafters of the federal provision also explained:
"The admission of evidence of identification finds substantial support, although it falls beyond a doubt in the category of prior out-of-court statements. Illustrative are People v. Gould, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960); Judy v. State, 218 Md. 168, 146 A.2d 29 (1958); State v. Simmons, 63 Wash.2d 17, 385 P.2d 389 (1963); California Evidence Code §§ 1238; New Jersey Evidence Rule 63(1)(c); N.Y.Code of Criminal Procedure §§ 393-b. Further cases are found in 4 Wigmore §§ 1130. The basis is the generally unsatisfactory and inconclusive nature of courtroom identifications as compared with those made at an earlier time under less suggestive conditions."
Advisory Committee's Notes on Rule 801, 28 U.S.C.App. Not a single one of the cases cited by the Committee as examples of the rule it had in mind involve descriptions.
When the Florida Evidence Code was drafted, the Committee explained that its identical provision on identifications:
"makes admissible as substantive evidence a statement of identification made by a person soon after his perception, if the person who made the identification testifies and is available for cross-examination concerning the identification. The identification was made at a time closer to the event in controversy when the mind of the witness was clearer. Both the testimony of the person making the identification and of witnesses who were present when the identification occurred would be admissible. This paragraph does not make admissible unconstitutional line-up identifications, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)...."
6C Fla.Stat.Ann. 296. No intent to admit mere descriptions as substantive evidence can be gleaned from this commentary.
*855 There are significant reasons for allowing as substantive evidence an out-of-court identification of a defendant occurring near the crime or its aftermath. For one, there is no mistaking "It was Sean."[5] Similarly, the witness who points to the third man in the line-up and says "That's him, that's the man who did it" is specifically naming one person in the whole world as the perpetrator.
Descriptions are different. They do not purport to reduce the universe of suspects to the one person who actually did it. Instead they define a class. And they do so not by naming or pointing to one person and one person only[6] but rather by stating general characteristics shared by substantial numbers of people. A "bushy-haired, one-armed stranger" may ultimately come to signify George, but only because other circumstances are brought to bear and thus shrink the class.
Eyewitness descriptions, though, are well-known to be rife with error.[7] There are factors that affect the reliability of a witness's perception of strangersespecially during the circumstances of a crime or startling event. And even aside from the perception of the witness, there is the problem of the open texture of descriptive language,[8] as well as its subjective nature. The witness may describe "a big man with light curly hair," but how big is big, and how light is light, and what is curly? To a woman barely 5 feet tall, a man of 6 feet may seem big, while to a woman nearly as tall he may seem of ordinary height. There is no standard currency in descriptive language; the terms may reasonably mean different things to speaker and listener. Yet, neither speaker nor listener is likely to mistake the meaning of "Sean did it."
And so, descriptions are often unreliable, while identifications are specific and usually free from doubt-at least as to whom one is referring. While a description may create a class of scores or hundreds or thousands of people, an identification is by definition a class of one. For these reasons the hearsay rule can plausibly be defined not to include identifications, but the reasons for doing so are entirely lacking when it comes to descriptions. I therefore dissent from today's decision.
NOTES
[1] The opinion in Swafford v. State, 533 So.2d 270 (Fla.1988), does not indicate whether the police officer who prepared the bulletin received the information directly from the witness. The opinion states that the police bulletin was "derived" from the witness' description. If the officer did not hear the declarant's statements himself, then the testimony was objectionable, since it presented an unresolved double hearsay problem. Under section 90.801(2)(c), Florida Statutes (1999), the declarant making the identification "must do so based on his or her personal knowledge of the individual identified and not upon the statement of another." CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 801.9 (2000 ed).
[2] Section 90.801(2)(c), Florida Statutes (1999) is identical to Federal Rule of Evidence 801(d)(1)(c). As such, federal cases dealing with rule 801(d)(1)(c) are persuasive in construing the Florida rule. See, e.g., Moore v. State, 452 So.2d 559, 561-62 (Fla. 1984); Hall v. Oakley, 409 So.2d 93, 97 (Fla. 1st DCA 1982), disapproved on other grounds, State v. Page, 449 So.2d 813 (Fla.1984) (stating "if a Florida Statute is patterned after a federal law on the same subject, it will take the same construction in the Florida courts as its prototype has been given in the federal courts").
[3] See McMullen v. State, 714 So.2d 368, 370 n. 5 (Fla.1998) (referring to a comprehensive treatment of the subject of eyewitness identification in the treatise Eyewitness Testimony: Civil and Criminal (3d ed.1997), authored by Elizabeth F. Loftus and James M. Doyle).
[4] See State v. DuBose, 99 Fla. 812, 128 So. 4, 6 (1930) (stating that "all the courts adhere to the policy of dealing with [issues] as cases arise in which they are directly involved and in which the question of validity is pointedly raised. They consistently decline to settle questions beyond the necessities of the immediate case. This court is committed to the `method of a gradual approach to the general, by a systematically guarded application and extension of constitutional principles to particular cases as they arise, rather than by out of hand attempts to establish general rules to which future cases must be fitted.'" [e .s.]); see also State Comm'n on Ethics v. Sullivan, 430 So.2d 928, 942 (Fla. 1st DCA 1983) (Shaw, J., concurring) ("Because this discussion is not essential to the decision in Key Haven ... I consider it to be obiter dicta which does not provide controlling judicial precedent.").
[5] Where Sean is a known person involved in or related to the events.
[6] Of course I exclude a description such as "the very muscled male actor with the vaguely German accent," whose effect is to specify Arnold. In that instance what purports to be merely a description is in reality an identification.
[7] See Helen O'Neill, "How Could the Perfect Witness Be So Wrong?," Fort Lauderdale Sun Sentinel (Oct. 14, 2000).
[8] See H.L.A. Hart, THE CONCEPT OF LAW 124-125 (Legal Classics Library 1990):

"communication ... will, at some point ... prove indeterminate; [it] will have what has been termed an open texture. So far we have presented this ... as a general feature of human language; uncertainty at the borderline is the price to be paid for the use of general classifying terms in any form of communication concerning matters of fact. Natural languages like English are when so used irreducibly open textured." [e.o.]