777 So.2d 452 (2001)
Eddie L. LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-1208.
District Court of Appeal of Florida, Fourth District.
February 14, 2001.
*453 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Eddie Lewis appeals his convictions for carjacking and driving while his license was suspended or revoked. We affirm, holding that the prosecutor's closing argument was proper.
At trial, the victim of the carjacking, cab driver Aniel Dameus, testified that he picked up a man at the Tri-Rail station in West Palm Beach, intending to take him to Boynton Beach for $25. Once they arrived in Boynton Beach, the passenger told the driver to stop the cab and asked him for a hand. Dameus gave the man his arm and helped him out of the cab. The man was "kind of putting his hand in his pocket." Then he pushed Dameus and hit him on the left side of the face. The man then got in the cab and took off.
Dameus called for help. A woman called the police for him. The police arrived at the scene within three to four minutes. The victim described the perpetrator to the police. He said the man was black, six feet tall, 300 pounds, and wearing dark blue. The police took Dameus to Delray Beach, where he again described the assailant to the police.
Officer Merkle responded to the scene of the carjacking and met with the victim, who told him "[t]hat a very large black male had just punched him and [taken] his cab." Dameus described the man as "a black male, approximately six foot tall, almost three hundred pounds, wearing dark clothes, possibly black [clothes] ... [with] a shirt and shorts." Officer Merkle put out a BOLO with this description. Approximately five to ten minutes later, dispatch advised Officer Merkle that the taxi had been found in Delray Beach.
The victim identified the taxi as the one taken from him. He told the police that the carjacker was "bigger than" Officer Weatherspoon and that he wore a black shirt and black short pants. Officer Weatherspoon was roughly 6 feet 3 inches tall and weighed about 260 to 270 pounds.
Less than twenty minutes after the victim identified his vehicle, Officer Weatherspoon noticed appellant Lewis, a black male, standing off the roadway about two blocks from where the police had found the taxi. Lewis was sweating profusely, which the officer thought unusual for that time of night. Although he said he was going home to a complex called Carver Estates, Lewis gave a street address which the officer knew was incorrect. Lewis wore a black shirt and black short pants. Officer Weatherspoon said that Lewis was "approximately six-three. He was a very tall, large gentleman, like myself, approximately two-thirty, two-forty pounds"
After he was taken to the location where Lewis had been stopped, Dameus identified Lewis as the carjacker.
At trial, however, Dameus was unable to make an in-court identification of Lewis as his assailant. Two police officers identified Lewis as the man Officer Weatherspoon had stopped on the night of the crime. Another police officer testified concerning the victim's out-of-court identification of Lewis as the carjacker at the arrest location.
*454 Lewis's point on appeal concerns the propriety of two portions of the prosecutor's closing argument. The prosecutor argued:
Mr. Dameus was asked on the stand as well, do you remember identifying this guy at the scene? Yes.
Are you positive, are you a hundred percent sure that's the guy you identified at the scene? He said, yes, at the time I was positive. When I saw the guy, I was positive.
Now, when something happensfirst off, with time memory fades. The identification closer in time is more reliable
Defense: Objection, there's nofacts not in evidence.
Court: Overruled.
State: An in-court identification is not required. The Defense will surely argue, well, he couldn't pick him out in court, you know....
Mr. Dameus is a taxi driver and he's probably driven hundreds of people in his taxi since that date. He's seen all kinds of faces. Is he supposed to remember exactly how this guy looks five months later? With time memory fades.
There won't be one single jury instruction that the judge will read you saying the State must have an in-court identification from the victim....
With time memory fades....
(Emphasis supplied).
Later, during closing, the state argued:
People change, people's appearances change.
Officer Weatherspoon was asked, does the Defendant look the same as he did that night to you? He said, well, he's not wearing a black shirt, he's not wearing the black shorts, he's not sweating profusely like he was that night.
He looks a little different, he doesn't look a[s] big as he did that night. People can lose weight in five months.
Now, no one's arguing that the Defendant has
Defense: Objection, facts not in evidence.
Court: Overruled.
State: No one's arguing that the Defendant has altered hishas had some great alteration of his appearance, all we're saying is, look, yes, Mr. Dameus couldn't recognize him in court, but he doesn't look like he did that night. They're not going to dress their client up in a black T-shirtblack shirt and black pants for court.
The officer's testimony concerning the victim's out-of-court identification of the defendant was admissible at trial under section 90.801(2)(c), Florida Statutes (2000). Since Dameus testified at trial and was subject to cross-examination, his out-of-court identification is non-hearsay, since it was one of "identification of [Lewis] made after perceiving" him. Id.
In the recent case of Puryear v. State, 774 So.2d 846, 852 (Fla. 4th DCA 2000), we observed that one of the reasons for admitting section 90.801(2)(c) identification statements as non-hearsay is that the "earlier, out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial." We cited to State v. Freber, 366 So.2d 426, 428 (Fla.1978), in which the supreme court wrote:
In our view, an identification made shortly after the crime is inherently more reliable than a later identification in court. The fact that the witness could identify the respondent when the incident was still so fresh in her mind is of obvious probative value. It is certainly not unusual for the appearance of a defendant to change in some way between his apprehension and trial. A holding not allowing this sort of testimony as substantive evidence of identity would encourage defendants to change their appearance before trial to avoid being identified in court. Without this proof *455 that the person previously identified by the witness was the defendant, conviction would in some instances be impossible.
(Footnote and citation omitted).
As the state correctly points out: Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.
Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982) (citations omitted).
The prosecutor's arguments were proper, containing logical inferences drawn from the evidence as to why more credence should be given to the victim's identification of his assailant at the arrest scene on the night of the carjacking than to his failure to recognize the defendant at trial.
AFFIRMED.
DELL and STEVENSON, JJ., concur.