POLEN, C.J.
Shawon Miles timely appeals after a jury convicted him of robbery with a firearm (Count I), aggravated assault with a firearm (Count II), and two counts of kid-naping with a firearm (Counts III-IV)He was sentenced as a prison releasee reoffender (PRR) to life in prison without parole on counts I, III, and IV, and to *369 fifteen years in prison on Count II. We affirm on all issues raised.
The charges in this case arose following a nighttime robbery by at least two men[1] at an automobile parts store. At trial, the store’s manager testified that on the night in question, a delivery man entered the store and told him that a black man with a ski mask was headed from behind the store out to the street. As the delivery man went back to his truck, the manager called 911.
Two masked intruders then entered the store, with the delivery man in tow. One of the men who wore a jacket held a gun and pointed it in between the manager’s eyes. The manager was told to hand over the money kept in the store’s safe. The intruders forced the store manager and the delivery man to leave the main part of the store and go down a hall into the manager’s office, where the safe was located. After handing over the money in the safe, the manager and delivery man were forced on the floor, where they were bound. They were told not to leave the office.
The delivery man corroborated the manager’s version of events. He explained that he was forced from his truck to enter the store.
The manager identified Miles as one of the perpetrators about fifteen minutes after the robbery and also in court based on Miles’ gold teeth; the delivery man, in contrast, could not identify Miles after he was caught by police. The state repeatedly asked the delivery man to look at “the individual sitting at the [defense] table, the black gentleman sitting between the two attorneys.” The court sustained Miles’ repeated objections. Miles soon thereafter moved for a mistrial based partly on the state’s reference to his race. The court denied the motion but offered Miles the opportunity to question the jurors to see if any of them were tainted because of the comments; Miles declined the offer.
The state also questioned a police officer as to what the manager and delivery man told him at the scene. The court sustained Miles’ objection as to the delivery man, but allowed the state to ask this question as it pertained to what the store manager said. The state elicited the descriptions that the manager gave of his assailants.
Another officer testified that soon after a BOLO was issued, he saw a black male walking toward the store, enter it for a few seconds, and then come out again. When the officer identified himself and told the man (Miles) to get on the ground, the man took off running. As he ran, he dropped a ski mask. A police dog found Miles hiding nearby, as well as two latex gloves and a jacket. The state’s DNA expert from the FBI testified that blood stains on the jacket and other stains found in the pocket matched Miles’ DNA. His DNA was also found on a ski hat.
On the second to last day of trial, before the state rested, Miles moved to strike one juror, who the state agreed had been sleeping. The court reserved ruling until the next morning. The next morning, Miles was not there; his attorney reminded the court about the problem and waived Miles’ presence. The court dismissed the juror and substituted her alternate.
After the state rested, Miles moved for a judgment of acquittal. He argued that the kidnaping charges were improper because the brief confinement of the two victims was only incidental to the robbery. The court denied the motions.
When the jury submitted its verdict, it asked the court to refer to the jurors only *370 by number and not by name because they feared retaliation. Miles lodged a general objection, but the court polled each juror only by number, as they requested. The court later denied Miles’ motion to call the jurors back and interview them about their request.

Dismissal of the juror in Miles’ absence

Miles first argues he was denied his right to be present when the sleeping juror was dismissed. We affirm because Miles failed to argue to the trial court that he was not given the opportunity to ratify his attorney’s waiver of his presence, as is required by Amazon v. State, 487 So.2d 8, 11 (Fla.1986). His argument, therefore, was waived.

Denial of Miles’ motion to disqualify sleeping juror

Miles then argues that the court should not have waited until the morning after he made his motion to disqualify the sleeping juror. He argues he was prejudiced because two state witnesses testified after he made the motion but before the substitution occurred the following day. This argument also fails on its face. Miles could not have been harmed at all by the brief delay because it is undisputed the alternate was there for this testimony. The judge replaced the juror before deliberations. Appellant having failed to demonstrate reversible error, we affirm as to this issue.

Overruling Miles’ objection with respect to tainting of jury

Miles then argues he was entitled to a new trial, or at least a juror interview, when the jurors informed the court they feared retribution from Miles. “Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.” § 90.607(2)(b), Fla. Stat. (1999). Consistent with the foregoing rule, the supreme court in Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97 (Fla.1991)[2] set forth the test courts should employ in determining when post-trial questioning of a juror is warranted. Specifically, a jury inquiry is permissible only when “the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial[.]” Id. at 100. Once the movant meets this burden, he “must establish actual juror misconduct [via] the juror interview.” Id. at 100 n. 1. If he meets this burden, the court must order a new trial unless the opposing party can show that the misconduct was harmless. Id.
In the instant case, there was no express allegation that the jurors received any nonrecord information. There was no allegation by Miles that the jurors engaged in any overt act of misconduct that otherwise would have made them subject to some limited inquiry. Rather, he lodged merely a general objection to the jurors’ note. Appellate courts should not consider grounds for such objections unless they have been stated with specificity at trial. See Filan v. State, 768 So.2d 1100, 1101 (Fla. 4th DCA 2000); Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999), rev. den., 751 So.2d 1252 (Fla.2000). Because Miles did not meet his burden under Maler, we must affirm.

Admission of hearsay evidence

Miles then argues the officer’s testimony which conveyed the store manag *371 er’s description of his assailant was inadmissible hearsay. In Puryear v. State, 774 So.2d 846 (Fla. 4th DCA 2000)(en banc), revieio granted, No. SC01-183, 790 So.2d 1107 (Fla. Jun. 12, 2001), this court held that such a description, made right after the victim perceives his assailant, constitutes non-hearsay identification under section 90.801(2)(c), Florida Statutes (1999). Puryear followed the supreme court’s reasoning in Power v. State, 605 So.2d 856, 862 (Fla.1992), which reached the same conclusion. It conflicted, however, with the supreme court’s reasoning in Swafford v. State, 533 So.2d 270 (Fla.1988), wherein the court held that a description is not an identification for purposes of section 90.801(2)(c). Stuafford interpreted this section as applying only to designations or references to a particular person or his photograph, as well as a statement that the person identified is the same as the person previously perceived. Id. at 276.
Under Puryear, we must affirm. The store manager gave his description to police after perceiving Miles and the incident that occurred moments before. Nevertheless, as we did in Puryear, we certify the following question to the supreme court as one of great public importance:
HAS SWAFFORD V. STATE, 533 So.2d 270 (Fla.1988) BEEN OVERRULED BY POWER V. STATE, 605 So.2d 856 (Fla.1992)?

Highlighting Miles’ race

Miles then argues the court should have granted a mistrial when the state repeatedly made references to the fact Miles was black. A motion for mistrial is directed to the sound discretion of the trial court, and should be granted only when necessary to ensure that the defendant receives a fair trial. Gorby v. State, 630 So.2d 544 (Fla.1993). Under this standard, we do not believe the state’s questions, while improper, diminished the fairness of the trial. The court observed that none of the jurors seemed affected by the comments. It even gave Miles the opportunity to voir dire the jurors to corroborate its own observations, but Miles declined the offer. With only the bare record to determine the effect of what transpired, we must presume the court’s observations were correct, especially since Miles did not see a need to interview the jurors. Therefore, we affirm.

Admission of DNA evidence at trial

Before trial, the state moved to take samples of Miles’ DNA. Miles did not object but asked the court to limit release of his samples to only the state attorney’s office and the West Palm Beach police department. The court granted both parties’ requests. Thereafter, Miles moved to exclude the DNA evidence on the grounds that the state forwarded the samples to the FBI for analysis, in contravention of the court’s order. The court denied his motion.
Miles cannot challenge the taking of his samples because he acquiesced to it. Rather, he rests his challenge primarily on section 943.325, Florida Statutes (1999). That statute provides, in pertinent part,
(l)(a) Any person who is convicted or was previously convicted in this state for any offense ... shall be required to submit two specimens of blood to a Department of Law Enforcement designated testing facility as directed by the department.
❖ * * *
(6) The [DNA] analysis, when completed, shall be entered into the automated database maintained by the Department of Law Enforcement for such purpose, and shall not be included in the state central criminal justice information repository.
(7) The results of a DNA analysis and the comparison of analytic results shall be released only to criminal justice *372 agencies as defined in s. 943.045(10), at the request of the agency. Otherwise, such information is confidential....
As the state notes, because the samples were taken from Miles prior to his conviction, this statute does not apply under the express provisions of subsection (l)(a).
Alternatively, Miles argues that submission of the samples to the FBI violated his right to privacy and the court’s in limine order. The record reflects, however, that the state did not willfully disregard the court’s order or Miles’ privacy. It was undisputed that the West Palm Beach police department lacked the ability to analyze the DNA samples. While it may have been better practice for the state to have sought permission from the court before sending the samples to the FBI, we hold refusal to exclude this evidence fell within the court’s discretion. See Fla. R.Crim. P. 3.220(n). Accordingly, we affirm.

Denial of motions for judgment of acquittal on kidnaping charges

Miles also argues he should have received a judgment of acquittal as to the kidnaping charges, since they were merely incidental to the robbery. To determine whether Miles’ confinement of the victims was a slight act that was merely incidental to the robbery, this court must apply the test adopted in Faison v. State, 426 So.2d 963 (Fla.1983). Under this test, the movement or confinement: (a) must not be slight, inconsequential and merely incidental to the other crimes; (b) must not be the kind inherent in the nature of the other crimes; and (c) must have some significance independent of the other crimes in that it makes the other crimes substantially easier to commit or substantially lessens the risk of detection. Id. at 965-66.
Here, the record supports that there was competent substantial evidence to meet the Faison test to support both convictions. Miles bound both victims. Applying the first prong of the Faison test, the confinement was not slight, inconsequential, and merely incidental to the robbery. The victims’ confinement continued even after the robbery had ceased. Applying the second prong, “the confinement was not of a sort inherent in a robbery because it was not necessary to tie up the victims in order to commit the robbery.” Berry v. State, 668 So.2d 967, 969 (Fla.1996). Applying the third prong, “it is clear that the binding of the victims was a confinement with independent significance from the underlying felony in that it substantially reduced the risk of detection.” Id. at 970. Thus, the confinement of these victims justifies the kidnaping convictions. See id.

Whether the PRR Act is unconstitutional

Finally, Miles argues the PRR Act is unconstitutional as violative of substantive due process, the ban against cruel and unusual punishment, overbreadth doctrine, equal protection, and Apprendi v. N.J., 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As Miles acknowledges, this and other courts have rejected these arguments in prior cases. See Grant v. State, 770 So.2d 655 (Fla.2000); State v. Cotton, 769 So.2d 345 (Fla.2000); Cameron v. State, - So.2d -, 26 Fla. L. Weekly D1748, 2001 WL 803716 (Fla. 4th DCA Jul.18, 2001); Kijewski v. State, 773 So.2d 124 (Fla. 4th DCA 2000), rev. den., No. SC01-181, 790 So.2d 1105 (Fla. April, 30, 2001). We reject them here as well.
AFFIRMED.
GUNTHER and WARNER, JJ., concur.

. The third, if he did exist, was not found.

. Jenkins v. State, 732 So.2d 1185 (Fla. 4th DCA 1999) confirmed the applicability of Maler in criminal cases.