810 So.2d 901 (2002)
Kevin PURYEAR, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-183.
Supreme Court of Florida.
February 7, 2002.
Carey Haughwout, Public Defender, and Margaret Good-Earnest, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Assistant Attorney General, Bureau Chief, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, FL, for Respondent.
WELLS, C.J.
We have for review Puryear v. State, 774 So.2d 846, 852-53 (Fla. 4th DCA 2000) (en banc), in which the Fourth District Court of Appeal certified the following question to be of great public importance:
HAS SWAFFORD V. STATE, 533 So.2d 270 (Fla.1988) BEEN OVERRULED BY POWER V. STATE, 605 So.2d 856 (Fla.1992)?
We have jurisdiction, see art. V, § 3(b)(4), Fla. Const., answer the certified question in the negative, and quash the Fourth District's decision in this case.
The victim, sixteen-year-old Amy Deese, was robbed on the afternoon of April 27, 1999, at a self-service car wash. Her assailant came from her back right side while she was kneeling and placed a hard *902 metallic object against her head, which Deese thought to be a gun. The assailant demanded Deese's money, and Deese gave the assailant six one-dollar bills from her back pocket. As Deese's assailant was running away, Deese stood up and looked at her assailant. Deese never directly viewed her assailant's face, but did observe the assailant's profile, clothing, height, and weight for a few seconds.
After being robbed, Deese drove home and told her mother of the occurrence and, soon thereafter, her boyfriend, Danny Cratsenberg. Deese described her assailant to Cratsenberg. Cratsenberg drove Deese to the police station, where Deese reported the incident to Detective Rhonda Wardlaw and provided Detective Wardlaw with a description of her assailant. Deese and Cratsenberg then departed the police station to drive to Deese's home. Near the crime scene, Deese and Cratsenberg saw an individual Deese believed to be her assailant and flagged down a police officer, who arrested Kevin Puryear.
At trial, Deese testified that her assailant was a black male who wore a burgundy shirt, black faded jeans, and white tennis shoes, was missing every other tooth, was between the ages of thirty and thirty-five, and had body odor. Deese did not remember when she saw her assailant's teeth and on cross-examination admitted that the testimony regarding the teeth was a guess on her part. She also testified that she first identified Puryear on the basis of his "clothing and height, stuff like that" but was positive that she correctly identified Puryear as her assailant at the time of his arrest.[1] On cross-examination, Deese conceded that she was only seventy-five percent sure that the person the police arrested was the same person who robbed her. Deese identified Puryear as her assailant in court.
The State attempted in its case-in-chief to elicit from both Detective Wardlaw and Cratsenberg the descriptions of the assailant Deese had given to them on the day she was robbed. Over Puryear's hearsay objection, Detective Wardlaw testified that Deese described the assailant as a black male, approximately six feet tall, weighing 140 pounds, between the ages of thirty and thirty-five, wearing a burgundy T-shirt with faded black blue jeans and white sneakers, missing every other tooth, having a mustache and having very strong body odor.[2] Over Puryear's hearsay objection, Cratsenberg testified that Deese told him that her assailant was a black male who was wearing a maroon shirt, faded black jeans, and white sneakers, had missing teeth, had a mustache, and "stunk." Officer Janet Kazmierczak, who participated in Puryear's arrest, testified that Puryear was wearing a burgundy T-shirt, faded black jeans, and white sneakers at the time of his arrest. The jury found Puryear guilty of robbery, as a lesser included offense of robbery with a weapon.[3]
Based upon section 90.801(2)(c), Florida Statutes (1999), the Fourth District affirmed *903 en banc the trial court's rulings allowing Cratsenberg and Detective Wardlaw to testify to the description Deese gave of her assailant. See id. at 852. The court also affirmed Puryear's robbery conviction. See id. at 853. In an attempt to discern the proper interpretation of section 90.801(2)(c), the Fourth District reviewed Swafford v. State, 533 So.2d 270, 275-76 (Fla.1988), and Power v. State, 605 So.2d 856, 862 (Fla.1992), and concluded that these two opinions irreconcilably conflicted regarding the proper interpretation of section 90.801(2)(c). See Puryear, 774 So.2d at 850. The Fourth District determined that Power overruled Swafford sub silentio, id. at 851, and the court held "that because the victim testified at trial and was extensively cross-examined, the trial court did not err in admitting the victim's out-of-court statements to the detective and her boyfriend." Id. at 852.
Concurring specially, Judge Taylor maintained that the court was bound by this Court's most recent section 90.801(2)(c) pronouncement in Power, but she argued that Swafford was the correct interpretation of section 90.801(2)(c). See id. at 853 (Taylor, J., concurring specially). Judge Farmer dissented and argued that the section 90.801(2)(c) statement in Power was dicta and, therefore, Swafford was binding precedent. See id. at 854 (Farmer, J., dissenting). We align ourselves with Judge Farmer's conclusion and hold that Swafford remains controlling precedent on the correct interpretation of section 90.801(2)(c).
Puryear argues that this Court decided the issue in Swafford and that the discussion in Power regarding section 90.801(2)(c) was dicta. The State maintains that this Court is not necessarily bound by our prior opinions. In any event, according to the State, Swafford is factually distinguishable because the declarant in Swafford, unlike in this case, never made an out-of-court identification. We do not believe that this factual difference is relevant to the issue of whether a third party may testify to the out-of-court description statements made by the declarant.
The certified question requires us to examine whether the trial court erred by allowing Cratsenberg and Detective Wardlaw to testify regarding Deese's descriptions of her assailant. The conclusion turns on the discrete issue of whether, pursuant to the nonhearsay exception of section 90.801(2)(c), Florida Statutes (1999), a third party may testify to a declarant's out-of-court description of an assailant where the declarant testifies at trial and is subject to cross-examination.[4] More generally, this case presents the issue of whether a description is a statement of identification.
We previously addressed this precise issue in Swafford and expressly held that a description is not an identification. See Swafford, 533 So.2d at 276. At issue in Swafford was a defense claim that the trial court improperly excluded a police officer's testimony about description statements made to the officer by a witness of a possible suspect. 533 So.2d at 275-76. On appeal, Swafford argued that the description testimony was not hearsay under section 90.801(2)(c), Florida Statutes (1985). See id. at 276.[5] In rejecting this *904 argument, we focused on the distinction between "description" and "identification." See id. This Court explained:
[A] description is not an identification. An "identification of a person after perceiving him," subsection 90.801(2)(c), is a designation or reference to a particular person or his or her photograph and a statement that the person identified is the same as the person previously perceived. The witness in this case never made an identification of the person he had seen; he only gave a description. This testimony does not meet the definition of "identification" as used in subsection 90.801(2)(c).
Id. (citation omitted).
Subsequent to our 1988 decision in Swafford, in 1992, we decided Power which also contained a discussion of section 90.801(2)(c). At issue in Power was the trial court's admission of two statements that witness Frank Miller made to Deputy Welty as testified to by Deputy Welty over the defendant's hearsay objection. See Power, 605 So.2d at 862. The two statements Miller made that Deputy Welty testified to were: (1) that Miller and his daughter usually picked the murder victim up for school at 9 a.m. at the Bare's residence; and (2) that the suspect was a white male with reddish-colored hair. See Power, 605 So.2d at 862. This Court affirmed the trial court's admission of the two statements. See id. at 862. In doing so, this Court found that "these statements were probably admissible under the `excited utterance' exception to the hearsay rule." Id. (emphasis added). This Court based this conclusion on Deputy Welty's observations of Miller's appearance, which was consistent with someone in an excited state. See id. (Deputy Welty testified that Miller "appeared to be a person that had just witnessed an unusual or serious crime, and very shaken."). This Court, however, further stated: "Additionally, the statement regarding the reddish hair was admissible nonhearsay as one of identification of a person made after perceiving him. See § 90.801(2)(c). Frank Miller testified at trial and was clearly subject to cross-examination." Power, 605 So.2d at 862.
Without question, this Court's discussion in Swafford concerning section 90.801(2)(c) was essential to its holding. We drew a clear distinction between a description and a statement of identification in Swafford and held that description "testimony does not meet the definition of `identification' as used in subsection 90.801(2)(c)." 533 So.2d at 276. This Court's discussion in Power concerning section 90.801(2)(c), however, was not essential to the holding in Power. Moreover, Power contains no analysis as to whether there was an error in legal analysis in Swafford or that any circumstances had changed since Swafford. In fact, Power did not cite to Swafford.
Admittedly, this Court was not clear in Power that it rested its holding on the excited utterance hearsay exception. A close examination of Power, however, reveals that the excited utterance hearsay exception applied to admit both statements at issue, whereas the section 90.801(2)(c) nonhearsay rule could only be applied to admit the reddish-color hair comment. Despite the equivocal language used by this Court in Power, i.e., "probably admissible" as an excited utterance, the only theory that explains the admission of both statements is the excited utterance theory. Thus, the section 90.801(2)(c) discussion was not necessary and constituted dicta.
This Court adheres to the doctrine of stare decisis. See Muhammad v. State, 782 So.2d 343, 365 n. 16 (Fla.2001); see also Tyson v. Mattair, 8 Fla. 107, 124 (1858) ("It is an established rule to abide by former precedents, stare decisis, where the same points come again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every *905 new judge's opinion...."). Justice Shaw has aptly explained the underlying principle of stare decisis:
[A] court when deciding a particular legal issue will pay due deference to its own past decisions on the same point of law. This is a judge-made rule created to assist courts in rendering decisions by making the work of judges easier, fostering stability in the law, and promoting public respect for the law as an objective, impersonal set of principles.
Perez v. State, 620 So.2d 1256, 1267 (Fla. 1993) (Shaw, J., dissenting); see also State v. Gray, 654 So.2d 552, 554 (Fla.1995) ("Stare decisis provides stability to the law and to the society governed by that law.") (citing State v. Schopp, 653 So.2d 1016 (Fla.1995) (Harding, J., dissenting)). Our adherence to stare decisis, however, is not unwavering. The doctrine of stare decisis bends where there has been a significant change in circumstances since the adoption of the legal rule, see Weiand v. State, 732 So.2d 1044, 1055 n. 12 (Fla.1999), or where there has been an error in legal analysis. See Gray, 654 So.2d at 554 (Fla.1995); see also Brown v. State, 719 So.2d 882, 890 (Fla.1998) (Wells, J., dissenting) ("[I]ntellectual honesty continues to demand that precedent be followed unless there has been a clear showing that the earlier decision was factually or legally erroneous or has not proven acceptable in actual practice.").
In the instant case, there has been no showing of a change in circumstances or an error in legal analysis.[6] While we acknowledge that our decision in Power was not absolutely precise, the statement of identification comment in Power was not necessary for the holding and constituted dicta.[7] On the basis of stare decisis, we adhere to our express holding in Swafford and recede from the dicta from Power which is inconsistent with this holding.
We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio. Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding. Where this Court's decisions create this type of *906 disharmony within the case law, the district courts may utilize their authority to certify a question of great public importance to grant this Court jurisdiction to settle the law.
Contrary to the Fourth District's conclusion, we conclude that section 90.801(2)(c) did not authorize the admission of the testimony of Detective Wardlaw and Cratsenberg regarding Deese's out-of-court descriptive statements. Accordingly, we answer the certified question in the negative, quash the Fourth District's en banc decision, and remand to the Fourth District for further proceedings not inconsistent with this opinion.[8]
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Deese testified that she identified Puryear from a distance of approximately twenty feet. She testified that the police stood Puryear up at the scene of his arrest and that she "got a pretty good look at him." On cross-examination, Deese admitted that her identification was only based on his clothing and not on any facial features.
[2] Without objection, Detective Wardlaw testified that at the time of his arrest, Puryear matched Deese's description and that he was emitting a very strong body odor. Detective Wardlaw also testified without objection that Deese unequivocally identified Puryear as her assailant at the time Puryear was arrested.
[3] The record indicates that based upon the State's motion, Puryear displayed his mouth for the jury.
[4] Section 90.801(2), Florida Statutes (1999), provides:

(2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
. . . .
(c) One of identification of a person made after perceiving the person.
[5] The 1999 version of section 90.801(2)(c) is the same as the 1985 version of this statute, except that the 1999 version contains sex-neutral language.
[6] We recognize the State's substantive argument that a majority of those jurisdictions directly addressing whether a description is included in the definition of statement of identification under a similar exception have held that descriptive statements are included in the definition. See United States v. Brink, 39 F.3d 419, 426 (3d Cir.1994); United States v. Moskowitz, 581 F.2d 14, 21 (2d Cir.1978); United States v. Marchand, 564 F.2d 983, 996 (2d Cir.1977); Adams v. State, 459 So.2d 999, 1002 (Ala.Crim.App.1984); Warren v. United States, 436 A.2d 821, 837 (D.C.1981); Morris v. United States, 398 A.2d 333, 338 (D.C. 1978); State v. Woodbury, 127 Idaho 757, 905 P.2d 1066, 1068-69 (Ct.App.1995); Commonwealth v. Weichell, 390 Mass. 62, 453 N.E.2d 1038, 1044 (1983); State v. Johnson, 216 N.J.Super. 588, 524 A.2d 826, 832 (Ct.App. Div.1987); People v. Poliakov, 167 A.D.2d 115, 561 N.Y.S.2d 435, 435 (1990); see generally State v. Motta, 66 Haw. 254, 659 P.2d 745, 750-51 (1983); People v. Palmer, 188 Ill.App.3d 414, 137 Ill.Dec. 90, 545 N.E.2d 743, 751 (1989); Rowe v. State, 262 Ind. 250, 314 N.E.2d 745, 749 (1974). A minority of other jurisdictions, however, do not allow these description statements to be admissible under a similar exception. See State v. Hester, 746 So.2d 95, 108 (La.Ct.App.1999); People v. Sykes, 229 Mich.App. 254, 582 N.W.2d 197, 205 (1998); State v. Jenkins, 168 Wis.2d 175, 483 N.W.2d 262, 267-68 (1992). It does not necessarily follow that this Court's section 90.801(2)(c) discussion in Swafford contained an error in legal analysis on account of the fact that this Court aligned itself with the minority rule.
[7] In its opinion, the Fourth District construed the comment in Power to be dicta. See Puryear, 774 So.2d at 850-51.
[8] We decline to address the State's alternative arguments, that the testimony at issue in this case was also admissible under the excited utterance exception and that any error was harmless, as those arguments exceed the scope of the certified question.