589 So.2d 219 (1991)
Victor Goldie KLOKOC, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 74146.
Supreme Court of Florida.
September 5, 1991.
Rehearing Denied November 27, 1991.
James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Margene A. Roper and Barbara C. Davis, Asst. Attys. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
This is an appeal from the first-degree murder conviction of Victor Goldie Klokoc and the death sentence imposed by the trial judge. Klokoc entered a plea of guilty to first-degree murder, waived a penalty phase jury, and sought to have this appeal dismissed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
This is a tragic incident in which Klokoc killed his nineteen-year-old daughter in order to spite his estranged wife. We affirm his first-degree murder conviction but reduce the death sentence to a sentence of life imprisonment without the possibility of parole for twenty-five years.
The relevant facts are as follows. Victor and Margaret Klokoc were married in 1967. Together they had three children: Victor, Jr., Elizabeth, and Jason. The Klokocs' marriage was marred by ongoing physical violence and, in March of 1988, four months before the subject incident, Klokoc was involuntarily committed to a mental hospital for five days because of violence towards his family. One month later, in April of 1988, Mrs. Klokoc left her husband after another incident of abuse. Klokoc *220 desperately tried to reach his wife to the point where he threatened to kill his son Jason if he did not reveal where his mother was.
On July 9, 1988, Klokoc began keeping a tape-recorded diary. The recorded entries describe his frustration at his futile attempts to locate his wife and possible methods of retaliation. Subsequently, Klokoc revealed on tape that he secretly bugged the house telephones in order to find out where his wife was when she called to talk to the children. In the meantime, Klokoc took two unsuccessful trips to find his wife. On July 13, 1988, Klokoc recorded on tape that, if his wife did not call him that evening, he would make her sorry for the rest of her life by killing their nineteen-year-old daughter, Elizabeth. That night Klokoc fatally shot his daughter by placing the pistol directly next to her head while she slept. Prior to killing Elizabeth, Klokoc made flight reservations to leave early in the morning of July 14, 1988, for Cleveland, Ohio, to seek his wife and her family.
Two days later, Klokoc was apprehended on a road to a campground in Medina, Ohio. A .38 caliber revolver was found under the front seat of his car along with two cassette tapes and a tape player. Klokoc was advised of his rights, signed a waiver, agreed to an interview, and admitted all the essential circumstances of this crime. The court appointed the public defender to represent Klokoc and two psychiatrists to examine him. The two court-appointed psychiatrists found Klokoc legally sane and competent to stand trial. Klokoc directed his counsel to advise the court that he wanted to enter a guilty plea. After an extensive plea hearing, the trial court accepted Klokoc's plea of guilty to the first-degree murder of his daughter. Klokoc then waived his right to a jury for the penalty phase.
Klokoc refused to allow his counsel active participation on his behalf in the penalty phase and refused to cooperate or allow counsel to present evidence by family members in mitigation. As a result, counsel moved to withdraw. That motion was denied by the court but, in view of Klokoc's lack of cooperation with his counsel, the court appointed special counsel to represent the public interest in bringing forth mitigating factors to be considered by the court in the sentencing proceeding.
The penalty phase commenced without special counsel. During this part of the proceeding, the state presented the testimony of Dr. Greenbaum, a psychiatrist who conducted a competency examination of Klokoc; Detective Casey, a police officer who investigated the murder of Elizabeth Klokoc; Deputy Walter, a deputy sheriff from Medina, Ohio, who obtained a statement from Klokoc after arresting him; and Mrs. Klokoc, who described her marriage to the defendant. Klokoc personally cross-examined each of these witnesses. During the second portion of the penalty phase proceeding, with special counsel present, the state presented the testimony of Klokoc's sons, Victor and Jason, who described life in the Klokoc household. Klokoc again declined active participation of his counsel in this proceeding. However, Klokoc personally cross-examined his children, as did the special counsel. At the conclusion of the state's case, Klokoc rested and expressly prohibited counsel from presenting evidence on his behalf. Special counsel then presented mitigating evidence, consisting of the following: first, Stephanie Rydzynski, Klokoc's sister, who described Klokoc's past and the circumstances surrounding his mental apprehension; second, Dr. Wickham, a forensic pathologist who testified that Elizabeth Klokoc died instantly; and, third, Dr. Wooten, a mental health professional, who, although he found Klokoc competent, explained Klokoc's mental problems, particularly his bipolar affective disorder.
In imposing the death sentence, the trial judge found one aggravating circumstance, specifically, that the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[1] The trial judge explained:

*221 The evidence presented in this proceeding shows such a heightened premeditation on the part of Defendant as to constitute this slaying a dispassionate and calm execution of the victim to achieve emotional gain for Defendant in knowing he had and would hurt his estranged wife, the mother of the victim, when she would become aware of this tragedy.
The trial judge also addressed five mitigating circumstances in the following manner:
(a) Defendant has no significant history of prior criminal activity. This circumstance is substantially diminished by Defendant's admittedly criminal abuse of his wife. On August 7, 1987, Defendant forced her into a motel room on Merritt Island, tied her to the bed, taped her mouth, raped her and continually threatened to kill her. On April 7, 1988, Defendant forced his wife into the tool box on his pick-up truck, locked the box, rode her around and periodically threatened to kill her.
(b) Defendant was under the influence [of] mental or emotional disturbance when the capital felony was committed; however, this disturbance was some two weeks in duration, of the same intensity, and did not in any sense deprive Defendant of his self control or appreciation of the wrongness of the homicide.
(c) The Defendant's capacity to conform his conduct to the requirements of law was impaired by his love/revenge emotions towards his wife, who Defendant perversely possessed. Psychologist Greenblum diagnosed Defendant as sane at the time of the capital felony, competent to stand trial, competent to participate in the penalty phase of the proceeding, and Defendant suffered with a personality disturbance but not any mental illness. Psychologist Wooten diagnosed Defendant as not insane at the time of the offense (though Defendant was under extreme emotional distress), competent to stand trial, competent to participate in the penalty phase proceeding, and Defendant did suffer from a bipolar affective disorder, manic type with paranoid features. Defendant's violence toward his family had caused them to "Baker Act" him in March, 1988, and he was released after a minimal stay in the hospital. It is the Court's finding that Defendant's consistent cadence over the two week period preceding the murder was: "someone close to my wife is going to die unless I get my way  I know it is wrong, but I need to be satisfied  and this seems logical to me," which cadence is congruent with Dr. Greenblum's diagnosis.
(d) Defendant had been a good material provider for his family. He was forced at a young age to take his deceased father's place as the head of the family. In doing so, Defendant met his responsibilities capably, though violently at times. Defendant's family has had some history of suicides, emotional disturbances, and alcoholism. Defendant has not been shown by the evidence to have had an alcohol problem, though he regularly consumed beer.
(e) The mitigating circumstance of Defendant's troubled family relationship has been brought out, aforesaid. This trouble lies at the feet of Defendant's need to possess his family. Defendant eloquently exhibits this in his last recorded telephone conversation with Jason, the same being secretly recorded by Defendant.
The trial judge concluded that the one aggravating circumstance outweighed the mitigating circumstances and imposed the death penalty.
The public defender's office was appointed to represent Klokoc on direct appeal. At Klokoc's insistence, the public defender moved to dismiss the appeal, stating: "Appellant, Victor G. Klokoc, after discussing the appeal with appellate counsel, wants to dismiss the appeal of the death sentence and be executed, and in that regard has signed a notice of voluntary dismissal." The motion also stated: "It will be appellant's position on appeal, if forced to submit an initial brief, that the death penalty should be imposed." We denied the motion and, in doing so, stated that
counsel for the appellant is hereby advised that in order for the appellant to *222 receive a meaningful appeal, the Court must have the benefit of an adversary proceeding with diligent appellate advocacy addressed to both the judgment and the sentence.
Accordingly, counsel for appellant is directed to proceed to prosecute the appeal in a genuinely adversary manner, providing diligent advocacy of appellant's interests. The foregoing rulings are made without prejudice to the right of appellant to request leave to file a pro se supplemental brief setting forth his personal positions and interests with regard to the subject matter of this appeal.
Klokoc v. State, No. 74,146 (Fla. Oct. 31, 1989) (order denying motion to dismiss appeal). In accordance with our order, counsel challenged the death sentence on the grounds that: (1) it is not supported by any valid statutory aggravating factor; (2) it is disproportionate under the Eighth and Fourteenth Amendments; and (3) it violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and article I, sections 9, 16, 17, and 22 of the Florida Constitution.
Regarding the first claim, counsel argues that the death sentence must be reversed because the cold, calculated, and premeditated aggravating factor found by the trial court is unconstitutionally vague. Furthermore, Klokoc's counsel asserts that, even if it is constitutional, it is not supported by the evidence since a pretense of moral or legal justification was present for this crime.
We reject the claim that section 921.141(5)(i), Florida Statutes, is unconstitutionally vague. See Harich v. Dugger, 844 F.2d 1464 (11th Cir.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989). We also reject the claim that this factor is not supported by the evidence. The evidence in this record justifies this aggravating circumstance.
In his next point, Klokoc's counsel asserts that Klokoc's death sentence should be reduced to life because of the mitigating circumstances in this cause. While this record reflects that this murder occurred when Klokoc was not in a heightened rage, it is unrefuted in this record that he was under extreme emotional distress. The record also establishes that he suffers from bipolar affective disorder, manic type with paranoid features, and that his family has a history of suicide, emotional disturbance, and alcoholism. Further, he had no record of prior criminal activity. In State v. Dixon, 283 So.2d 1, 10 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we held that "[r]eview by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case." In applying that principle to the instant case, we find that the one statutory aggravating factor does not outweigh the unrefuted mitigating factors when comparing this cause to other death penalty decisions. Nibert v. State, 574 So.2d 1059 (Fla. 1990); Smalley v. State, 546 So.2d 720 (Fla. 1989); Songer v. State, 544 So.2d 1010 (Fla. 1989); Lloyd v. State, 524 So.2d 396 (Fla. 1988); Proffitt v. State, 510 So.2d 896 (Fla. 1987). This finding requires us to reduce Klokoc's sentence to life imprisonment without the possibility of parole for twenty-five years.
Accordingly, we hold that the guilty plea was valid and direct that Klokoc's sentence of death be vacated and that he be sentenced to life imprisonment without the possibility of parole for twenty-five years. Furthermore, we find that the state's cross-appeal, arguing that the aggravating factor of pecuniary gain is applicable in this instance, is without merit.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] § 921.141(5)(i), Fla. Stat. (1987).