# Supreme Court of Florida

_____

No. SC13-443
_____

**JAMES ROBERTSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[July 10, 2014]

PER CURIAM.

This case is before the Court on appellate counsel's amended motion to withdraw from the representation of James Robertson, a prisoner under sentence of death whose direct appeal of his first-degree murder conviction and death sentence is currently pending before this Court under article V, section 3(b)(1), of the Florida Constitution. In the motion, appellate counsel advises this Court that his client, Robertson, wishes to argue in favor of the death sentence. Citing rule 4-1.2(a) of the Rules Regulating The Florida Bar, which requires a lawyer to abide by his or her client's decisions concerning the objectives of representation, appellate counsel seeks an order from this Court permitting him to withdraw from

representation to avoid an alleged violation of his ethical responsibility to his client. For the following reasons, we deny the motion to withdraw.

First, article V, section 3(b)(1), of the Florida Constitution states that this Court "[s]hall hear appeals from final judgments of trial courts imposing the death penalty." The Legislature has mandated in section 921.141(4), Florida Statutes (2013), in pertinent part, that "[t]he judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida." Thus, our mandatory review of both the validity of the judgment and the propriety of the death sentence is "automatic" and does not depend upon the acquiescence of the death-sentenced defendant.

Our review of each sentence of death is also critical to the maintenance of a constitutional capital sentencing scheme in this state. In 1988, this Court held that "even though [the defendant] expressed a desire to be executed, this Court must, nevertheless, examine the record to be sure that the imposition of the death sentence complies with all the standards set by the Constitution, the Legislature, and the courts." Goode v. State, 365 So. 2d 381, 384 (Fla. 1978). We recognized our obligation to "foster uniformity in death-penalty law" in Tillman v. State, 591 So. 2d 167, 169 (Fla. 1991), and more recently, in Yacob v. State, 136 So. 3d 539, 549 (Fla. 2014), we reemphasized that the death penalty is reserved for only the most aggravated and least mitigated of cases. In that decision, we again noted our

obligation to assure that the death penalty is not imposed in an arbitrary or capricious manner in this state and explained that our review is essential to the viability and validity of state law allowing for imposition of the death penalty in Florida. See id. at 546-47.

The United States Supreme Court in Gregg v. Georgia, 428 U.S. 153 (1976), explained that its earlier decision in Furman v. Georgia, 408 U.S. 238 (1972), "mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg, 428 U.S. at 189. The only way for this Court to ensure that a death sentence is not arbitrarily or capriciously imposed is to provide meaningful appellate review of each death sentence. In fact, the Supreme Court in Gregg expressly noted as follows in upholding the Georgia capital sentencing scheme as constitutional:

> [T]he Georgia statute has an additional provision designed to assure that the death penalty will not be imposed on a capriciously selected group of convicted defendants. The new sentencing procedures require that the State Supreme Court review every death sentence to determine whether it was imposed under the influence of passion, prejudice, or any other arbitrary factor, whether the evidence supports the findings of a statutory aggravating circumstance, and "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

Id. at 204 (emphasis added). The Supreme Court explained that the "provision for appellate review in the Georgia capital-sentencing system serves as a check against the random or arbitrary imposition of the death penalty" and "[i]n particular, the proportionality review substantially eliminates the possibility that a person will be sentenced to die by the action of an aberrant jury." Id. at 206. Florida law similarly requires that this Court shall automatically review every judgment of conviction and sentence of death. § 921.141(4), Fla. Stat.

Our long-established precedent has given life to these constitutional and statutory safeguards against an unconstitutional capital sentencing scheme, even in cases where the defendant expresses a desire to be executed. In Klokoc v. State, 589 So. 2d 219, 221-22 (Fla. 1991), we denied the defendant's request to dismiss the direct appeal, stating that this Court required the benefit of an adversary proceeding to provide a meaningful review of both the judgment and the sentence. In Ocha v. State, 826 So. 2d 956, 964 (Fla. 2002), we explained that "Klokoc reiterates this Court's interest in ensuring that every death sentence is tested and has a proper basis in Florida law." The Court in Ocha also noted that a death-sentenced defendant may under certain circumstances waive his right to present mitigating evidence at trial, "yet have appellate counsel appointed against his wishes." Id.

While appellate counsel urges that we should now recede from <u>Klokoc</u> and <u>Ocha</u>, which require counsel to provide diligent appellate advocacy addressed to both the judgment and the sentence, a decision to depart from the principles of stare decisis cannot be taken lightly. "The presumption in favor of <u>stare decisis</u> is strong," <u>North Florida Women's Health & Counseling Services, Inc. v. State</u>, 866 So. 2d 612, 637-38 (Fla. 2003), although not unwavering. The doctrine is said to bend "where there has been a significant change in circumstances since the adoption of the legal rule or where there has been an error in legal analysis." <u>Brown v. Nagelhout</u>, 84 So. 3d 304, 309 (Fla. 2012) (quoting <u>Puryear v. State</u>, 810 So. 2d 901, 905 (Fla. 2002)). The circumstances of this case meet neither of these requirements.

This Court has also made clear that in order to depart from stare decisis for an error in legal analysis, the "gravity of the error and the impact of departing from precedent must be carefully assessed." <u>Id.</u> We have recognized sufficient gravity where the prior decision is "unsound in principle" or "unworkable in practice." <u>Id.</u> (quoting <u>Garcia v. San Antonio Metro. Transit Auth.</u>, 469 U.S. 528, 547 (1985)). Again, the circumstances in this case meet neither of these requirements to justify departure from our established precedent, which has served to effectuate the duty of this Court to provide automatic, mandatory review of both judgments of conviction and sentences of death in capital cases.

We conclude that there is simply no reason to depart from our reliable, established, and necessary procedure for requiring current counsel to proceed with diligent appellate advocacy to facilitate our mandatory review in death penalty cases where the defendant, in effect, seeks this Court's assistance in being put to death. By contrast, there are numerous reasons why a decision to recede from Klokoc and Ocha would be both erroneous and unwise, and would result in a serious threat to the soundness of Florida's capital sentencing scheme—not the least of which is the disruption and delay that would be engendered by granting the motion to withdraw.

In sum, we discern no ethical violation in requiring current counsel to continue to prosecute this appeal fully for the benefit of the Court in meeting its statutory and constitutional duties. Accordingly, the motion to withdraw is hereby denied. Consistent with this Court's prior precedent in analogous situations, and as requested in the motion, Robertson may seek leave to file a pro se supplemental brief setting forth his personal positions and interests with regard to the subject matter of the appeal. See Klokoc, 589 So. 2d at 222.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion in which LABARGA, C.J., and PERRY, J., concur.
QUINCE, J., dissents.
CANADY, J., dissents with an opinion in which POLSTON, J., concurs.

PARIENTE, J., concurring.

I fully concur in the majority opinion denying the motion to withdraw. I write separately to more completely explain my reasoning on two issues raised by the motion that the majority correctly rejects: (1) that requiring appellate counsel to file an adversarial brief arguing against the death penalty would violate counsel's ethical obligations; and (2) that the procedure this Court articulated in Klokoc v. State, 589 So. 2d 219, 221-22 (Fla. 1991), violates the defendant's "personal autonomy" to choose not to argue against the conviction or sentence.

First, I conclude that requiring appellate counsel for a death-sentenced defendant to argue against the death penalty on direct appeal does not raise any ethical concerns, even when the defendant wishes to argue in favor of the death sentence. Typically, the defendant exercises the "ultimate authority" over the "fundamental decision" of whether to "take an appeal." See Puglisi v. State, 112 So. 3d 1196, 1204-05 (Fla. 2013) (explaining that there are four "fundamental decisions" that belong solely to the defendant—whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal). Florida's capital sentencing scheme, however, explicitly removes this decision from the purview of a defendant who has been sentenced to death. Because a capital defendant's appeal of the judgment of conviction and sentence of death is mandated by section 921.141(4), Florida Statutes (2013), which provides that the judgment and sentence

- 7 -

are subject to "automatic" appellate review, the defendant's "fundamental decision" to "take an appeal" is not implicated.

Moreover, pursuant to the ethical rules governing attorney conduct, the defendant is not the "captain of the ship" regarding which issues to raise in an appeal, as appellate counsel has explicitly acknowledged in the motion to withdraw. See Amended Motion to Withdraw at 2, Robertson v. State, No. SC13-443 (Fla. Jan. 31, 2014) (stating that decisions such as "what issues to raise (on appeal)" are "within the attorney's ambit, after consultation with the client"). Appellate counsel also has stated that, after reviewing the record, "there are several legal issues" that he "could credibly raise." Id. at 6.

This much is therefore clear. Based on the highly significant state interests in ensuring that the death penalty is administered fairly, reliably, and uniformly—as embodied in the Florida Constitution and in section 921.141 of the Florida Statutes—a capital defendant cannot choose in the first instance whether to pursue the direct appeal. There is thus no "fundamental decision" over which the defendant exercises the "ultimate authority" implicated in this situation. In addition, while appellate counsel must consult with the defendant, the defendant does not have the right to determine which issues to raise during the direct appeal. Finally, this particular defendant is represented by an attorney who "could credibly

- 8 -

raise" legal issues that may cast doubt on whether the death penalty was fairly, reliably, and uniformly imposed in this case.

Though infrequent, this situation has arisen previously, and no ethical violation has ever been suggested, much less found. See, e.g., Hamblen v. State, 527 So. 2d 800, 802 & n.2 (Fla. 1988) (denying motion to withdraw, despite the death-sentenced defendant's clear desire not to appeal); Klokoc, 589 So. 2d at 222 (denying motion to dismiss the direct appeal and requiring counsel to file an adversarial brief, despite the death-sentenced defendant's desire not to appeal); Hill v. State, 656 So. 2d 1271, 1272 (Fla. 1995) (denying motion to proceed pro se and discharge appellate counsel during the direct appeal of a death penalty case); Ocha v. State, 826 So. 2d 956, 964 (Fla. 2002) (reaffirming Klokoc and stating that it is "not inconsistent for Ocha to waive his right to present mitigating evidence at the trial level, yet have appellate counsel appointed against his wishes").

Despite our prior precedent, current appellate counsel asserts in the motion to withdraw that requiring him to file an adversarial brief will result in a violation of Rule Regulating The Florida Bar 4-1.2(a). In my view, this argument is unavailing because it fails to take into account both that counsel cannot be deemed to violate an ethical rule based on conforming to a court order, see R. Reg. Fla. Bar 4-3.4(c), and that this Court, which has the ultimate responsibility for interpreting the ethical rules, has previously determined that no ethical violation exists. See art.

- 9 -

V, § 15, Fla. Const. (providing that this Court "shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted"); R. Reg. Fla. Bar 3-1.2 ("The Supreme Court of Florida has the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established." (emphasis added)).

Appellate counsel is also not required, through his representation of Robertson during the direct appeal, to divulge any confidential information from the client. See R. Reg. Fla. Bar 4-1.6 (providing that, in the absence of informed consent from the client, a lawyer must not reveal information relating to the representation). Likewise, appellate counsel need not raise or discuss any matters outside the record and the legal issues that are properly presented to this Court during its review of the death sentence "to ensure the uniform application of law, evidentiary support, and proportionality." Ocha, 826 So. 2d at 964; see also R. Reg. Fla. Bar 4-1.2 cmt. (stating that "a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so"). Accordingly, I see no ethical conflict in requiring current counsel to provide

- 10 -

diligent appellate advocacy addressed to both the judgment and death sentence, as explained in Klokoc.

I also find counsel's suggestion that the procedure articulated in Klokoc violates the defendant's "personal autonomy" to be equally unavailing. The United States Supreme Court has held, with respect to a defendant's right to self-determination, that the "status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when the jury returns a guilty verdict." Martinez v. Court of Appeal of Cal., 528 U.S. 152, 162 (2000). As this Court has explained, "[w]hile a defendant has a constitutional right to self-representation and self-determination at trial, these rights do not continue to the same degree after the conviction." Lambrix v. State, 124 So. 3d 890, 899 (Fla. 2013), cert. denied, 134 S. Ct. 1789 (2014). Even as related to postconviction proceedings—which, unlike the automatic direct appeal, may be waived under certain circumstances, see Fla. R. Crim. P. 3.851(i)—this Court has cautioned that "[a]ny right of self-determination and self-representation . . . does not outweigh this Court's solemn duty to ensure that the death penalty is imposed in a fair, consistent, and reliable manner." Lambrix, 124 So. 3d at 900.

Indeed, this Court has long explained that its review of death penalty cases under article V, section 3(b)(1), of the Florida Constitution and section 921.141, Florida Statutes, "begin[s] with the premise that death is different." Fitzpatrick v.

- 11 -

State, 527 So. 2d 809, 811 (Fla. 1988) (citing State v. Dixon, 283 So. 2d 1, 7 (Fla. 1973)).  As further stated by this Court in describing its appellate review of capital cases, a "high degree of certainty in procedural fairness as well as substantive proportionality must be maintained in order to insure that the death penalty is administered evenhandedly."  Id.  This is actually of particular concern when the defendant expresses a desire to be executed because "it is not necessarily those most deserving of the death penalty (e.g., the most aggravated and least mitigated) who seek its imposition."  Muhammad v. State, 782 So. 2d 343, 369 (Fla. 2001) (Pariente, J., specially concurring).

The American Bar Association's Standards for Criminal Justice and Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases—which provide a guide to determining the reasonableness of attorney conduct, see Rompilla v. Beard, 545 U.S. 374, 387 (2005)—specifically explain that a defendant's stated desire to plead guilty or be executed cannot form the basis for an attorney's competent representation of the defendant.  See, e.g., ABA Standards for Criminal Justice 4-4.1 (providing that defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty, and that this duty exists regardless of the defendant's stated desire to plead guilty).  In fact, the death penalty standards explicitly state that it is "ineffective assistance for

counsel to simply acquiesce" to a client's desires to be executed. ABA Guidelines for the Appointment & Performance of Defense Counsel in Death Penalty Cases 10.5 cmt. In other words, not only does the client have no right to commit state-assisted suicide, but it is actually ineffective—and therefore unethical—conduct for an attorney to accede to this request.

This Court has carefully considered these factors in previous cases and has reached the conclusion—which is well-supported by statute, case law, and the ethical rules—that a defendant does not possess a right to self-determination that encompasses the right to forego counsel and the automatic direct appeal of a death sentence. As advocated by the State in its response to the motion in this case, the procedure set forth in Klokoc, which requires the attorney to file an adversarial brief but permits the defendant to also file a pro se statement explaining the reasons for not wanting to appeal, remains a balanced, efficient, and appropriate way to handle this situation. That the State does not object to requiring appellate counsel to file an adversarial brief in accordance with Klokoc indicates that all parties have a heightened interest in ensuring that the direct appeal of a death penalty case is conducted in a thorough and precise manner.

For all these reasons, I conclude that there is no ethical conflict in requiring appellate counsel to adhere to the procedure articulated by this Court in Klokoc, and that nothing in Klokoc results in a violation of the defendant's "personal

autonomy." Accordingly, I concur in the majority's decision to deny the motion to withdraw.

LABARGA, C.J., and PERRY, J., concur.

CANADY, J., dissenting.

Whether to "take an appeal" is among the "fundamental decisions" that "the accused [in a criminal case] has the ultimate authority to make." Jones v. Barnes, 463 U.S. 745, 751 (1983). The accused in a criminal case also has a basic right to a lawyer who is faithful to the ethical requirement of Rule Regulating the Florida Bar 4-1.2(a) that "a lawyer shall abide by a client's decisions concerning the objectives of representation." The majority unjustifiably infringes on Mr. Robertson's right to make the fundamental decision of whether to pursue the appeal of his death sentence as well as his right to a lawyer who will follow the ethical imperative to abide by Mr. Robertson's decision concerning the objectives of representation. I dissent from this infringement of Mr. Robertson's rights.

**I.**

None of the grounds relied on by the majority to justify its decision can withstand scrutiny. The majority falls short in its efforts to find a basis for this decision in the Florida Constitution, the Florida death penalty statute, or the United States Supreme Court's death penalty jurisprudence. Although prior decisions of

- 14 -

this Court provide support for precluding the waiver of appeal by a defendant under a sentence of death, none of those decisions rests on a reasoned basis.

A.

The Florida Constitution, in article 5, section 3(b)(1), provides a right of appeal to this Court for defendants on whom a sentence of death has been imposed. But the Constitution does not prohibit waiver of the right of appeal by a competent defendant. Article 5, section 3(b)(1), states that "[t]he Supreme Court . . . [s]hall hear appeals from final judgments of trial courts imposing the death penalty and from decisions of district courts of appeal declaring invalid a state statute or a provision of the state constitution." Nothing in this constitutional provision suggests that a defendant in a death penalty case is precluded from waiving the right of appeal, any more than the provision suggests that parties in cases declaring invalid a state statute or provision of the Florida Constitution are precluded from waiving their right of appeal.

B.

And nothing in section 921.141(4), Florida Statutes (2013), alters—or could alter—either the nature of the right of appeal granted by the Florida Constitution or the nature of this Court's jurisdiction. The statutory provision regarding "automatic review by the Supreme Court of Florida" merely recognizes that death cases are directly appealable to this Court and that we have mandatory—that is,

- 15 -

nondiscretionary—jurisdiction over such cases. The statute by no means expressly precludes a defendant from waiving the defendant's right of appeal, and the statutory context provides no basis for reading such a limitation on the rights of defendants into the statute. An automatic appeal is not equivalent to a non-waivable appeal. Our decisions precluding the waiver of appeal by a defendant under a sentence of death twists this statutory provision to reach a result that is at odds with the recognized ultimate authority of a criminal defendant to make the decision of whether to take an appeal. Jones, 463 U.S. at 751.

C.

Finally, nothing in the jurisprudence of the Supreme Court bars a defendant under a sentence of death from waiving the right to appeal the sentence. The Supreme Court's recognition that the "provision for appellate review" under state capital-sentencing schemes "serves as a check against the random or arbitrary imposition of the death penalty," Gregg v. Georgia, 428 U.S. 153, 206 (1976), does not entail the denial of an individual defendant's right to decide whether to "take an appeal," Jones, 463 U.S. at 751.

Indeed, the Supreme Court's death penalty jurisprudence rests on the recognition that "the Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." Roper v. Simmons, 543 U.S. 551, 560 (2005) (emphasis added). It is not based on some abstract right of the state to ensure

- 16 -

appropriate sentences but on the concrete right of individuals to be free of cruel and unusual punishments. In this case, it is Mr. Robertson's right that is at issue, and his decision concerning whether to pursue an appeal to vindicate that right—as well as his right to a lawyer who will support that decision—should not be annulled. Respect for the individual dignity of the defendant requires respect for his decision of whether to pursue an appeal and for his right to a lawyer who will not work against him.

## III.

A defendant under a sentence of death should not be deprived of basic rights that are afforded to all other criminal defendants. Defense counsel in this case has been placed in an untenable ethical position because Mr. Robertson has not been allowed to waive his right of appeal. I would remand this matter to the trial court to determine whether Mr. Robertson has made a knowing, intelligent, and voluntary waiver of his right of appeal. See Durocher v. Singletary, 623 So. 2d 482, 484-85 (Fla. 1993) (holding that a competent prisoner on death row may waive his right to collateral counsel and postconviction proceedings and remanding the case to the trial court for "the trial judge forthwith to conduct a Faretta[v. California, 422 U.S. 806 (1975),]-type evaluation of Durocher to determine if he understands the consequences of waiving collateral counsel and proceedings"). If

Mr. Robertson has made a knowing, intelligent, and voluntary waiver, this appeal should be dismissed.

POLSTON, J., concurs.


An Appeal from the Circuit Court in and for Charlotte County,
Christine Hissam Greider, Judge - Case No. 09-812F

Howard L. Dimmig, II, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Bartow, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Stephen D. Ake, Assistant Attorney General, Tampa, Florida,

for Appellee