PARIENTE, J.,
concurring.
I fully concur in the majority opinion denying the motion to withdraw. I write separately to more completely explain my reasoning on two issues raised by the motion that the majority correctly rejects: (1) that requiring appellate counsel to file an adversarial brief arguing against the death penalty would violate counsel’s ethical obligations; and (2) that the procedure this Court articulated in Klokoc v. State, 589 *911 So.2d 219, 221-22 (Fla.1991), violates the defendant’s “personal autonomy” to choose not to argue against the conviction or sentence.
First, I conclude that requiring appellate counsel for a death-sentenced defendant to argue against the death penalty on direct appeal does not raise any ethical concerns, even when the defendant wishes to argue in favor of the death sentence. Typically, the defendant exercises the “ultimate authority” over the “fundamental decision” of whether to “take an appeal.” See Puglisi v. State, 112 So.3d 1196, 1204-05 (Fla.2013) (explaining that there are four “fundamental decisions” that belong solely to the defendant — whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal). Florida’s capital sentencing scheme, however, explicitly removes this decision from the purview of a defendant who has been sentenced to death. Because a capital defendant’s appeal of the judgment of conviction and sentence of death is mandated by section 921.141(4), Florida Statutes (2013), which provides that the judgment and sentence are subject to “automatic” appellate review, the defendant’s “fundamental decision” to “take an appeal” is not implicated.
Moreover, pursuant to the ethical rules governing attorney conduct, the defendant is not the “captain of the ship” regarding which issues to raise in an appeal, as appellate counsel has explicitly acknowledged in the motion to withdraw. See Amended Motion to Withdraw at 2, Robertson v. State, No. SC13-443 (Fla. Jan. 31, 2014) (stating that decisions such as “what issues to raise (on appeal)” are “within the attorney’s ambit, after consultation with the client”). Appellate counsel also has stated that, after reviewing the record, “there are several legal issues” that he “could credibly raise.” Id. at 6.
This much is therefore clear. Based on the highly significant state interests in ensuring that the death penalty is administered fairly, reliably, and uniformly — as embodied in the Florida Constitution and in section 921.141 of the Florida Statutes— a capital defendant cannot choose in the first instance whether to pursue the direct appeal. There is thus no “fundamental decision” over which the defendant exercises the “ultimate authority” implicated in this situation. In addition, while appellate counsel must consult with the defendant, the defendant does not have the right to determine which issues to raise during the direct appeal. Finally, this particular defendant is represented by an attorney who “could credibly raise” legal issues that may cast doubt on whether the death penalty was fairly, reliably, and uniformly imposed in this case.
Though infrequent, this situation has arisen previously, and no ethical violation has ever been suggested, much less found. See, e.g., Hamblen v. State, 527 So.2d 800, 802 & n. 2 (Fla.1988) (denying motion to withdraw, despite the death-sentenced defendant’s clear desire not to appeal); Klokoc, 589-So.2d at 222 (denying motion to dismiss the direct appeal and requiring counsel to file an adversarial brief, despite the death-sentenced defendant’s desire not to appeal); Hill v. State, 656 So.2d 1271, 1272 (Fla.1995) (denying motion to proceed pro se and discharge appellate counsel during the direct appeal of a death penalty case); Ocha v. State, 826 So.2d 956, 964 (Fla.2002) (reaffirming Klolcoc and stating that it is “not inconsistent for Ocha to waive his right to present mitigating evidence at the trial level, yet have appellate counsel appointed against his wishes”).
Despite our prior precedent, current appellate counsel asserts in the motion to withdraw that requiring him to file an adversarial brief will result in a violation of Rule Regulating The Florida Bar 4-1.2(a). In my view, this argument is unavailing *912 because it fails to take into account both that counsel cannot be deemed to violate an ethical rule based on conforming to a court order, see R. Reg. Fla. Bar 4-3.4(c), and that this Court, which has the ultimate responsibility for interpreting the ethical rules, has previously determined that no ethical violation exists. See art. V, § 15, Fla. Const, (providing that this Court “shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted”); R. Reg. Fla. Bar. 3-1.2 (“The Supreme Court of Florida has the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established.” (emphasis added)).
Appellate counsel is also not required, through his representation of Robertson during the direct appeal, to divulge any confidential information from the client. See R. Reg. Fla. Bar 4-1.6 (providing that, in the absence of informed consent from the client, a lawyer must not reveal information relating to the representation). Likewise, appellate counsel need not raise or discuss any matters outside the record and the legal issues that are properly presented to this Court during its review of the death sentence “to ensure the uniform application of law, evidentiary support, and proportionality.” Ocha, 826 So.2d at 964; see also R. Reg. Fla. Bar 4-1.2 cmt. (stating that “a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so”). Accordingly, I see no ethical conflict in requiring current counsel to provide diligent appellate advocacy addressed to both the judgment and death sentence, as explained in Klokoc.
I also find counsel’s suggestion that the procedure articulated in Klokoc violates the defendant’s “personal autonomy” to be equally unavailing. The United States Supreme Court has held, with respect to a defendant’s right to self-determination, that the “status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when the jury returns a guilty verdict.” Martinez v. Court of Appeal of Cal., 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). As this Court has explained, “[wjhile a defendant has a constitutional right to self-representation and self-determination at trial, these rights do not continue to the same degree after the conviction.” Lambrix v. State, 124 So.3d 890, 899 (Fla.2013), cert, denied, — U.S. —, 134 S.Ct. 1789, 188 L.Ed.2d 760 (2014). Even as related to postconviction proceedings — which, unlike the automatic direct appeal, may be waived under certain circumstances, see Fla. R.Crim. P. 3.851 (i) — this Court has cautioned that “[a]ny right of self-determination and self-representation ... does not outweigh this Court’s solemn duty to ensure that the death penalty is imposed in a fair, consistent, and reliable manner.” Lambrix, 124 So.3d at 900.
Indeed, this Court has long explained that its review of death penalty eases under article V, section 3(b)(1), of the Florida Constitution and section 921.141, Florida Statutes, “begin[s] with the premise that death is different.” Fitzpatrick v. State, 527 So.2d 809, 811 (Fla.1988) (citing State v. Dixon, 283 So.2d 1, 7 (Fla.1973)). As further stated by this Court in describing its appellate review of capital cases, a “high degree of certainty in procedural fairness as well as substantive proportionality must be maintained in order to insure that the death penalty is administered evenhandedly.” Id. This is actually of particular concern when the defendant expresses *913 a desire to be executed because “it is not necessarily those most deserving of the death penalty (e.g., the most aggravated and least mitigated) who seek its imposition.” Muhammad v. State, 782 So.2d 348, 369 (Fla.2001) (Pariente, J., specially concurring).
The American Bar Association’s Standards for Criminal Justice and Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases— which provide a guide to determining the reasonableness of attorney conduct, see Rompilla v. Beard, 545 U.S. 374, 387, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005) — specifically explain that a defendant’s stated desire to plead guilty or be executed cannot form the basis for an attorney’s competent representation of the defendant. See, e.g., ABA Standards for Criminal Justice 4-4.1 (providing that defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty, and that this duty exists regardless of the defendant’s stated desire to plead guilty). In fact, the death penalty standards explicitly state that it is “ineffective assistance for counsel to simply acquiesce” to a client’s desires to be executed. ABA Guidelines for the Appointment & Performance of Defense Counsel in Death Penalty Cases 10.5 cmt. In other words, not only does the client have no right to commit state-assisted suicide, but it is actually ineffective — and therefore unethical — conduct for an attorney to accede to this request.
This Court has carefully considered these factors in previous cases and has reached the conclusion — which is well-supported by statute, case law, and the ethical rules — that a defendant does not possess a right to self-determination that encompasses the right to forego counsel and the automatic direct appeal of a death sentence. As advocated by the State in its response to the motion in this case, the procedure set forth in Klokoc, which requires the attorney to file an adversarial brief but permits the defendant to also file a pro se statement explaining the reasons for not wanting to appeal, remains a balanced, efficient, and appropriate way to handle this situation. That the State does not object to requiring appellate counsel to file an adversarial brief in accordance with Klokoc indicates that all parties have a heightened interest in ensuring that the direct appeal of a death penalty case is conducted in a thorough and precise manner.
For all these reasons, I conclude that there is no ethical conflict in requiring appellate counsel to adhere to the procedure articulated by this Court in Klokoc, and that nothing in Klokoc results in a violation of the defendant’s “personal autonomy.” Accordingly, I concur in the majority’s decision to deny the motion to withdraw.
LABARGA, C.J., and PERRY, J., concur.