PARIENTE, J.,
concurring in part and dissenting in part.
I concur in affirming Sparre’s conviction for first-degree murder. I dissent, however, from the affirmance of his sentence of death. In my view, the trial court erred by failing to call mitigation witnesses and by then rejecting the proposed mitigating factors that the testimony of these witnesses may have established, particularly where defense counsel stated that they could present potentially significant and compelling mitigating evidence regarding Sparre’s mental health and dysfunctional personal history.
I write to explain why this error cannot be considered harmless beyond a reasonable doubt and also to urge that this Court adopt specific guidelines for when trial courts should either appoint special counsel or call mitigation witnesses in any case where the defendant validly waives. the presentation of mitigating evidence. While I agree with this Court’s continued emphasis on ensuring that all available mitigation is considered by the trial court, see Marquardt v. State, 156 So.Bd 464, 490-491 (Fla.2015), I would go one step further and require the appointment of *1203 special counsel in every case where the defendant waives mitigation.
I.
A.
In this case, Sparre was only nineteen years old at the time of the crime and had a history of mental illness and physical and emotional abuse. Four mental health experts were prepared to testify as to the nature of his illness and that he had diagnoses of Attention Deficit Hyperactivity Disorder (ADHD), Posttraumatic Stress Disorder (PTSD), substance abuse, Intermittent Explosive Disorder, and Bipolar Schizoaffective Disorder — and that his PTSD dated back to his childhood when he was in a boys’ school in South Carolina. Defense counsel also informed the trial court that they were prepared to present testimony that Sparre’s continued use of drugs, such as hydrocodone and cocaine, could cause blackouts and memory loss, and that he had a dysfunctional family and personal history.
Despite being informed about all of this potentially significant mitigating evidence, including mental health mitigation, the trial court failed to take any action, other than to order a comprehensive presentence investigation report (PSI) as required by Muhammad v. State, 782 So.2d 343, 363-64 (Fla.2001). The trial court did not hear from witnesses that could have testified as to what may have prompted Sparre’s PTSD during childhood, nor did the trial court ascertain any other potentially compelling mitigation concerning Sparre’s mental health and the mitigating circumstances that may apply — even though the trial court was specifically alerted to the existence of this potentially significant evidence. Thus, aside from what can be gleaned from the PSI, the record is devoid of any evidence in mitigation for this young offender since none of the mitigation that clearly exists was ever presented.
Although this Court has left it to the discretion of the trial courts to determine whether to call mitigation witnesses or appoint special counsel to present mitigating evidence in cases where the defendant waives mitigation, see id. at 364, a trial court’s discretion is not without limits. In particular, trial courts still have an obligation to consider and weigh all possible mitigation in the record and to call witnesses when the PSI “alerts the court to the existence of significant mitigation.” Russ v. State, 73 So.3d 178, 189 (Fla.2011). By improperly limiting its consideration of the mitigating evidence to only what was contained in the PSI, even though the trial court was alerted to “the existence of significant mitigation” in this case, I would conclude that the trial court abused its discretion, which must be exercised in a way that enables the trial court and this Court to accurately and reliably determine whether a death sentence is warranted under Florida law.
The sole reason offered by the trial court in its written sentencing order for not exercising its important discretion to call mitigation witnesses, or to appoint special counsel to do so, based on the mitigation that defense counsel informed the trial court that they could present, was that Sparre did not want any witnesses to be called. This was error since the trial court is required by Florida’s capital sentencing statute to ensure that the defendant is truly deserving of the death penalty, which is not solely dependent on a defendant’s own wishes to be sentenced to death. See § 921.141(3), Fla. Stat. (2012) (requiring a trial court to weigh the aggravating and mitigating circumstances and, if imposing a sentence of death, to state that there are insufficient mitigating circumstances to outweigh the aggravating circumstances). *1204 In fact, not only did the trial court fail to call witnesses or appoint special counsel even after being alerted to the existence of this significant mitigation, but the- trial court then compounded this error by rejecting defense counsel’s proposed mitigating circumstances that testimony from these witnesses may have established, stating that it “was not required to accept” those mitigators as proven based on the information defense counsel brought to the trial court’s attention.
Because the trial court failed to even explore the proposed mitigators based on evidence that could have been presented, this Court is likewise unable to adequately fulfill our constitutional and statutory responsibilities to determine whether this case constitutes one of the most aggravated and least mitigated of all murders, for which the death penalty is properly imposed. See State v. Dixon, 283 So.2d 1, 7 (Fla.1973). This is of particular concern because “it is not necessarily those most deserving of the death penalty (e.g., the most aggravated and least mitigated) who seek its imposition and refuse to present mitigation.” Muhammad, 782 So.2d at 869 (Pariente, J., specially concurring).
B.
This Court’s attempt on appeal to perform a harmless error analysis reveals the inherent problems created by the trial court’s error. See majority op. at 1196-98. Simply put, because none of the potentially significant mitigation was ever presented, there is no basis in the record for the majority to conclude beyond a reasonable doubt that the defendant was not prejudiced — that is, that there is no reasonable possibility that the jury or trial judge would have been affected by potentially compelling mitigation evidence to which they were never exposed.
This Court’s decision in Klokoc v. State, 589 So.2d 219 (Fla.1991), perfectly illustrates why the trial court’s error cannot be considered harmless. Klokoc, who wished to be executed, waived the presentation of mitigating evidence, but the trial court appointed special counsel, who offered testimony concerning, among other things, Klo-koc’s mental illness. Id. at 220. On direct appeal, this Court vacated the death sentence, concluding — based in large part on the evidence obtained and introduced by special counsel — that the murder occurred while Klokoc “was under extreme emotional distress” and that he suffered “from bipolar affective disorder, manic type with paranoid features, and that his family has a history of suicide, emotional disturbance, and alcoholism.” Id. at 222.
Similarly, in this case, we are confronted with a young offender who has a potentially compelling mental health and dysfunctional family background, including a diagnosis of PTSD dating to childhood and a physically and emotionally abusive upbringing. Just as in Klokoc and our subsequent cases, this Court is required to consider whether this is truly a case deserving of the death penalty or whether the death penalty is not warranted, given both the nature of the crime and this young man’s history. See Farr v. State, 621 So.2d 1368, 1369 (Fla.1993) (explaining that the requirement that all mitigation be considered and weighed “applies with no less force when a defendant argues in favor of the death penalty, and even if the defendant asks the court not to consider mitigating evidence”).
Yet, in the absence of any witness testimony or evidence introduced by special counsel, as was done in Klokoc, we are unable to consider the impact of Sparre’s mental illness on the commission of this crime, which hinders our responsibility to ensure that the death penalty is reliably *1205 and uniformly imposed in all cases. Accordingly, a new penalty-phase proceeding is required.
II.
In my view, this case also represents another important reminder that the time has come to prospectively require the appointment of special counsel in any ease in which the defendant waives mitigation, “in order to better assist the trial court and this Court in fulfilling its constitutional and statutory obligations in death penalty cases.” Muhammad, 782 So.2d at 368 (Pariente, J., specially concurring). As then-Chief Justice Barkett opined over twenty years ago, the appointment of special counsel is critical in order for this Court “to ensure a reliable and proportionate sentence.” Koon v. Dugger, 619 So.2d 246, 251 (Fla.1993) (Barkett, C.J., specially concurring). “It should be the state’s independent and informed decision that imposes death and not the decision of a defendant who uses the state as an instrument for suicide.” Farr, 621 So.2d at 1371 (Barkett, C.J., specially concurring).
This case demonstrates why it is critical that we “have a uniform procedure to be followed in all cases where the defendant waives mitigation so that available mitigating evidence is placed in the record at the time of the original sentencing proceedings.” Muhammad, 782 So.2d at 368 (Pariente, J., specially concurring). Since Muhammad, where this Court authorized trial courts in their discretion to appoint special counsel, we have unfortunately continued to encounter some cases where special counsel has been appointed and others where trial courts have chosen not to do so, and this Court has still offered no definitive guidelines as to when the appointment of special counsel is appropriate. Compare Russ, 73 So.3d 178 (appointing special counsel), with Ocha v. State, 826 So.2d 956 (Fla.2002) (not appointing special counsel).
Joined by Justices Shaw and Anstead in Muhammad, I stated as follows in asserting why appointment of special counsel should be required in all cases where the defendant waives mitigation, which remains as true today as it did over thirteen years ago:'

Because of the tremendous responsibilities placed on the trial court and this Court in death penalty cases, rather than leave the appointment of counsel to the trial court’s discretion on a ease-by-case basis, I would thus adopt a prospective rule that would provide for the appointment of special counsel to present available mitigation for the benefit of the jury, the trial court and this Court in order to assist the judiciary in performing our statutory and constitutional obligations. This procedure, of course, would not prevent the defendant himself or herself from arguing in favor of the death penalty.

Adoption of this procedure would serve to promote several important interests critical to the integrity of the process: (1) it would assist any advisory jury in making a more informed sentencing recommendation of either death or life and in fulfilling its statutory obligation to weigh mitigating and aggravating circumstances under section 924.141(2)(b); (2) it would assist the trial court in making a more informed decision as to whether to impose the death sentence by ensuring that the court has before it the available mitigating evidence; and (3) it would facilitate this Court’s constitutionally mandated obligation to review each death sentence for proportionality.
I also believe that adoption of this procedure would serve the important ad *1206 ditional goal of promoting finality when a sentence of death is imposed.
Muhammad, 782 So.2d at 370-71 (Pariente, J., specially concurring) (emphasis added). As further explained, “not only would a procedure providing for appointment of special counsel promote the fair and efficient administration of justice, but it would do so without requiring significant additional resources.” Id. at 371.
If a majority of this Court does not agree to prospectively require the appointment of special counsel in all cases where the defendant waives mitigation, trial courts should at least be provided guidance as to how to exercise their discretion, which is not boundless, in these difficult cases. In particular, I would advise trial courts that, when they are made aware of the probability of significant mental health mitigation — as here — special counsel should be appointed, or alternatively, one or more of the mental health experts should be called to testify. This would be an additional step to further this Court’s important task to ensure reliability and uniformity of cases where the death penalty is imposed and would be consistent with this Court’s own precedent regarding the basis for the trial court to call witnesses or appoint special counsel in the first place. See Muhammad, 782 So.2d at 364 (“Further, if the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion to call persons with mitigating evidence as its own witnesses .... If the trial court prefers that counsel present mitigation rather than calling its own witnesses, the trial court possesses the discretion to appoint counsel to present the mitigation.... ” (emphasis added)).
Finally, while it is true that no lawyer raised objections to the adequacy or comprehensiveness of the PSI in this case, without the appointment of special counsel, there was no attorney in a position to object to the PSI. The reality is that no matter how often we direct that the PSI must be “comprehensive,” the very fact that the PSI is compiled by non-lawyers who are less familiar with the types of available and compelling mitigation that can be effectively presented makes the trial court’s decision of whether to call additional witnesses a difficult one. Requiring the appointment of special counsel to evaluate the PSI and present witnesses would assist the trial court’s ability to ensure that it has been fully informed about all mitigating evidence before determining whether to impose a death sentence and would thus foster consistency and integrity in sentencing proceedings.